(Nos. 97023, 97866 cons.—

RAYMOND G. SCACHITTI *et al.*, Appellants, v. UBS FINANCIAL SERVICES *et al.*, Appellees.—THE ILLINOIS HEALTH FACILITIES AUTHORITY *ex rel.* RAYMOND G. SCACHITTI *et al.*, Appellants, v. MORGAN STANLEY DEAN WITTER & COMPANY *et al.*, Appellees.

*Opinion filed June 3, 2005.*

Clinton A. Krislov and Jason P. Stiehl, of Chicago, for appellants.

Taras A. Gracey, of Winston & Strawn, L.L.P., of Chicago, Steven F. Molo and Rebecca J. Trent, of Shearman & Sterling, L.L.P., of New York, New York, and Louis R. Cohen and Gordon Pearson, of Wilmer, Cutler, Pickering, Hale & Dorr, L.L.P., of Washington, D.C., for appellee UBS Financial Services, Inc.

Alan N. Salpeter, Michele Odorizzi and Jonathan C. Medow, of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago for appellee Deloitte & Touche, L.L.P.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Chaka Patterson and Christopher M. McClellan, Assistant Attorneys General, of Chicago, of counsel), intervenor.

Dolores M. Veninga, of Chicago, for *amici curiae* People of the State of Illinois *ex rel.* David Sipich and George C. Hook.

Tracy L. Netzel, of Chicago, and Deborah Zuckerman, Sarah Lock and Michael Schuster, of Washington, D.C., for *amicus curiae* AARP.

Michael I. Behn, of Futterman & Howard, Chrtd., of Chicago, and Jim Moorman, Amy Wilken and Bret Boyce, of Washington, D.C., for *amicus curiae* Taxpayers Against Fraud.

Richard A. Devine, State's Attorney, of Chicago, and Patrick D. Driscoll, Jr., and Paul A. Castiglione, Assistant State's Attorneys, for *amicus curiae* Cook County Treasurer Maria Pappas.

Clinton A. Krislov and Jason P. Stiehl, of Chicago, for appellants.

Douglas J. Kurtenbach, Mark J. Nomellini and John E. Tangren, of Kirkland & Ellis, L.L.P., of Chicago, for appellee Morgan Stanley Dean Witter & Co.

Stanley J. Parzen and James C. Schroeder, of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago, for appellee Ernst & Young, L.L.P.

Tracy L. Netzel, of Chicago, and Deborah Zuckerman, Sarah Lock and Michael Schuster, of Washington, D.C., for *amicus curiae* AARP.

Michael I. Behn, of Futterman & Howard, Chrtd., of Chicago, and Jim Moorman, Amy Wilken and Bret Boyce, of Washington, D.C., for *amicus curiae* Taxpayers Against Fraud.

JUSTICE KILBRIDE delivered the opinion of the court:

In these related appeals we address: (1) whether taxpayers have standing to assert common law claims on behalf of the State of Illinois; (2) whether private citizens have standing to maintain a cause of action on behalf of the state for recovery of fraudulently obtained public funds under section 20—104(b) of article XX of the Code of Civil Procedure (article XX) (735 ILCS 5/20—104(b)

(West 2002)); and (3) whether private persons have standing to bring suit on behalf of the state under the *qui tam* provisions of the Whistleblower Reward and Protection Act (Act) (740 ILCS 175/1 *et seq.* (West 2002)). The circuit court of Cook County dismissed plaintiffs' complaints, holding this court's recent opinion in *Lyons v. Ryan*, 201 Ill. 2d 529 (2002), foreclosed plaintiffs' claims. The circuit court further held the entire Act unconstitutional based on this court's reasoning in *Lyons*.

We allowed plaintiffs' direct appeals. See 134 Ill. 2d R. 302(a). We affirm in part and reverse in part, and hold: (1) taxpayers lack standing to assert common law claims on behalf of the state; (2) private citizens lack standing to maintain a cause of action on behalf of the state for recovery of fraudulently obtained public funds under section 20—104(b) of article XX (735 ILCS 5/20—104(b) (West 2002)); (3) private persons have standing to bring suit on behalf of the state under the *qui tam* provisions of the Act (740 ILCS 175/1 *et seq.* (West 2002)); and (4) the circuit court erred in declaring the Act unconstitutional.

## I. BACKGROUND

Plaintiffs' counsel issued 278 requests to various state and local governmental units under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2002)), seeking documents relating to nearly 300 bond clearance transactions. As a result of information obtained from the requests, plaintiffs brought these actions.

These cases essentially repleaded pendent state claims dismissed in earlier suits filed in the United States District Court for the Northern District of Illinois. The federal cases were dismissed for lack of subject matter jurisdiction.

### A. Appeal No. 97023

On November 21, 2002, plaintiffs, Raymond G. Sca-

chitti, Patrick J. Houlihan, and Robert F. Rifkin, filed a "taxpayer derivative action" on behalf of the State of Illinois against defendants, Payne Webber Group, Inc., now known as UBS Financial Services (UBS), and Deloitte & Touche, L.L.P. (Deloitte). The lawsuit sought to recover, on behalf of the state, overcharges made by UBS in connection with advance refunding bond transactions in 1992. UBS served as the lead underwriter for the state's issuance of new bonds to refinance, at lower rates, certain bonds issued by the state between 1985 and 1992.

Plaintiffs' complaint alleged UBS overcharged the state in connection with the 1992 advance refunding bond transactions. An advance refunding bond transaction is a financial investment vehicle allowing the sale of new bonds and using the proceeds to purchase securities. These securities are held in a defeasance escrow to assure the future payment of outstanding bonds that cannot presently be redeemed because the call provisions are for a future date. Deloitte was the accounting firm engaged by the state to verify the accuracy of the escrow account. According to plaintiffs' complaint, federal law restricts the overall yield governmental units can earn on securities placed in a defeasance escrow. Charging more than the market value is referred to as "burning" the yield on the securities. Plaintiffs allege "yield burning" violates IRS regulations requiring securities to be purchased at market value and any profit resulting from positive arbitrage be paid to the United States Treasury to prevent the refunding bonds from losing tax-exempt status.

Plaintiffs, on behalf of the state, sought recovery of fraudulently obtained public funds from UBS under article XX (735 ILCS 5/20—101 *et seq.* (West 2002)). Section 20—102 of article XX provides that any person who receives fraudulently obtained public funds, whether or not that person has committed the fraud, must refund

the money. 735 ILCS 5/20—102 (West 2002). Section 20—103 states that a person who receives compensation, benefits or remuneration "to which he is not entitled, or in a greater amount than that to which he is entitled" shall be liable to repay those amounts and, in addition, is liable for civil penalties, including treble damages. 735 ILCS 5/20—103 (West 2002).

Plaintiffs also sought recovery, on behalf of the state, of fraudulently obtained public funds from defendants under the *qui tam* provisions of the Act (740 ILCS 175/1 *et seq.* (West 2002)). Plaintiffs, as taxpayers, further asserted common law claims on behalf of the state as follows: breach of fiduciary duty against defendants for misrepresenting the fair market value of the treasury securities it sold the state to be held in the defeasance escrow for the 1992 refunding bonds; fraud and breach of contract against UBS; and breach of contract, accountant malpractice, and negligent and fraudulent misrepresentation against Deloitte.

Plaintiffs sought: (1) compensatory, treble, or other damages and civil penalties; (2) rescission of contracts "between, or for the benefit of," the state and defendants and an award of restitution damages; (3) attorney fees and expenses; and (4) "extraordinary equitable and/or injunctive relief, including attaching, impounding, imposing a constructive trust upon or otherwise restricting defendants' assets." Although plaintiffs' complaint was filed as a putative class action, the prayer for relief did not seek class certification.

Plaintiffs served a copy of the complaint upon the Attorney General. After reviewing plaintiffs' complaint and submission of evidence, the Attorney General declined to intervene in the action. Plaintiffs attempted to litigate the case on behalf of the state. The circuit court of Cook County granted defendants' motions to dismiss, holding plaintiffs lacked standing to sue on behalf of the state.

The circuit court also declared the Act unconstitutional in light of *Lyons*, 201 Ill. 2d 529, as a usurpation of the exclusive authority of the Attorney General to sue on behalf of the state.

This court allowed plaintiffs' direct appeal. See 134 Ill. 2d R. 302(a). Although the Illinois Attorney General was never involved in the proceedings below, we granted the Illinois Attorney General leave to intervene in the appeal (see 735 ILCS 5/2—408 (West 2002)) and to file a brief addressing the constitutionality of the Act. We granted the AARP and Taxpayers Against Fraud, and relators David Sipich and George C. Hook, leave to submit *amicus curiae* briefs in support of plaintiffs. See 155 Ill. 2d R. 345. Cook County Treasurer Maria Papas was granted leave to file an *amicus curiae* brief in support of defendants. See 155 Ill. 2d R. 345.

### B. Appeal No. 97866

On September 13, 2002, Raymond G. Scachitti, Patrick J. Houlihan, and Robert F. Rifkin filed a "taxpayer derivative action" on behalf of the Illinois Health Facilities Authority (Authority) against Morgan Stanley Dean Witter & Company (Morgan), and Ernst & Young, L.L.P. (Ernst). The lawsuit sought to recover, on behalf of the Authority, overcharges made by Morgan in connection with advance refunding bond transactions in 1993.

Morgan served as the lead underwriter for the Authority's issuance of new bonds to refinance, at lower rates, certain revenue bonds issued by the Authority in 1989. Ernst was the accounting firm engaged by the Authority to verify the accuracy of the escrow account.

Plaintiffs' complaint sought recovery of fraudulently obtained public funds from Morgan under sections 20—102 and 20—103 of article XX (735 ILCS 5/20—102, 20—103 (West 2002)). Plaintiffs' complaint also sought recovery of fraudulently obtained public funds from defendants under the *qui tam* provisions of the Act (740

ILCS 175/1 *et seq.* (West 2002)). In addition, plaintiffs asserted the following common law claims: breach of fiduciary duty against defendants for misrepresenting the fair market value of the treasury securities it sold the Authority to be held in the defeasance escrow for the 1993 refunding bonds; fraud and breach of contract against Morgan; and breach of contract and accountant malpractice against Ernst.

Plaintiffs' complaint sought: (1) compensatory, treble, or other damages and civil penalties; (2) rescission of contracts "between, or for the benefit of," the Authority and defendants and an award of restitution damages; (3) attorney fees and expenses; and (4) "extraordinary equitable and/or injunctive relief, including attaching, impounding, imposing a constructive trust upon or otherwise restricting defendants' assets."

The circuit court of Cook County dismissed plaintiffs' complaint, holding plaintiffs lacked standing to sue on behalf of the state. The circuit court also declared the Act unconstitutional in light of this court's reasoning in *Lyons*, 201 Ill. 2d 529, as an unconstitutional usurpation of the exclusive authority of the Attorney General to sue on behalf of the state.

This court allowed plaintiffs' direct appeal. See 134 Ill. 2d R. 302(a). We granted the AARP and Taxpayers Against Fraud leave to submit an *amicus curiae* brief in support of plaintiffs. See 155 Ill. 2d R. 345.

## II. ANALYSIS

The issues presented in these two appeals involve identical questions of law. Accordingly, the court has, *sua sponte*, consolidated these appeals. See 137 Ill. 2d R. 384(a).

These appeals arise from the dismissal of plaintiffs' complaints for lack of standing. Section 2—619(a)(9) of the Code of Civil Procedure (Code) provides that a complaint may be involuntarily dismissed for lack of

standing. 735 ILCS 5/2—619(a)(9) (West 2002). "The standing doctrine assures that issues are presented to a court only by parties who have a sufficient stake in the outcome of the controversy." *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 482 (1992). A party lacking an interest in the controversy has no standing to sue. *Hartigan*, 153 Ill. 2d at 482. We review a dismissal order based on lack of standing *de novo. Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

Plaintiffs argue the circuit court erred in dismissing their complaints for lack of standing. Plaintiffs also contend the circuit court erroneously held the Act (740 ILCS 175/1 *et seq.* (West 2002)) unconstitutional.

Initially, we note plaintiffs claim standing to bring all of their claims as taxpayers of the State of Illinois. Plaintiffs use the terms *"qui tam"* and "taxpayer" interchangeably throughout their briefs and refer to "common law" *qui tam* taxpayer suits, as if *qui tam* actions and taxpayer actions are synonymous. As we shall explain, they are not. While it is true all of the actions asserted by plaintiffs are purportedly brought for public benefit, the history and case law regarding the development of these actions reveal quite different premises for each.

A "taxpayer action" is brought by private persons in their capacity as taxpayers, "on behalf of themselves and as representatives of a class of taxpayers similarly situated within a taxing district or area, upon a ground which is common to all members of the class, and for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as such taxpayers." See 74 Am. Jur. 2d *Taxpayers' Actions* § 1 (2001), citing *State ex rel. Conrad v. Langer*, 68 N.D. 167, 277 N.W. 504 (1937); *Canton Farm Equipment, Inc. v. Richardson*, 501 So. 2d 1098 (Miss. 1987). Illinois law specifically provides

taxpayers standing to enjoin a public officer's misuse of public funds. See 735 ILCS 5/11—301 *et seq.* (West 2000). Moreover, this court has recognized:

> "It has long been the rule in Illinois that citizens and taxpayers have a right to enjoin the misuse of public funds, and that this right is based upon the taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation. The misuse of these funds for illegal or unconstitutional purposes is a damage which entitles them to sue." *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956) (citing *Krebs v. Thompson*, 387 Ill. 471 (1944), and *Fergus v. Russel*, 270 Ill. 304 (1915)).

A "taxpayer derivative action," on the other hand, is an action brought by a taxpayer on behalf of a local governmental unit to enforce a cause of action belonging to the local governmental unit. See *Feen v. Ray*, 109 Ill. 2d 339, 345 (1985) (finding that a taxpayer who seeks to recover solely on behalf of school district brings the action derivatively). "The claimed injury [in a taxpayer derivative action] is not personal to the taxpayers, but rather impacts the governmental entity on whose behalf the action is brought." *Lyons*, 201 Ill. 2d at 535. See also *Feen*, 109 Ill. 2d at 345 ("Where a taxpayer sets judicial machinery in motion in a derivative action, the direct injury to be remedied is not personal to the taxpayer. Rather, the right of action is that of the governmental entity. [Citation.]").

In contrast, a *"qui tam* action" is an action brought under a statute authorizing an informant to bring a civil action to recover a penalty for the commission or omission of a certain act and providing that a part of the penalty be paid to the informer. R. Fischer, *Qui Tam Actions: The Role of the Private Citizen in Law Enforcement*, 20 UCLA L. Rev. 778, 780 (1973). It "is called a *'qui tam* action'; because the plaintiff states that he sues *as well* for the state as for himself." (Emphasis in original.) 20 UCLA L. Rev. at 778, citing Black's Law

Dictionary 1414 (4th ed. 1951). The term *qui tam* is an abbreviation for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* meaning " 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone." *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 768 n.1, 146 L. Ed. 2d 836, 843 n.1, 120 S. Ct. 1858, 1860 n.1 (2000), citing 3 W. Blackstone, Commentaries \*160.

Despite plaintiffs' assertion that there is a long history and tradition of *qui tam* actions in England and the United States, *qui tam* actions have only existed by express statutory authorization in the United States. See *Vermont Agency,* 529 U.S. at 776, 146 L. Ed. 2d at 847, 120 S. Ct. at 1864 ("there is no evidence that the Colonies allowed common-law *qui tam* actions[;] \*\*\* they did pass several former statutes expressly authorizing *qui tam* suits"). Accordingly, in the United States "the rights of *qui tam* plaintiffs are *always* based on a statute" and, "[b]y definition, *qui tam* rights have *never* existed without statutory authorization." (Emphases added.) 20 UCLA L. Rev. at 780.

"Whistleblower statutes" are, however, generally designed to protect an employee from retaliation for disclosure of an employer's misconduct. See, *e.g.,* 5 ILCS 395/1 (West 2002) (Whistle Blower Protection Act) (prohibiting retaliatory action against employees of constitutional officers who disclose prohibited activity). Thus, a "whistleblower" is an employee who reports his or her employer's misconduct. See Black's Law Dictionary 1627 (8th ed. 1999).

Before we can begin our analysis of plaintiffs' standing in this litigation, we must determine the nature of plaintiffs' causes of action; that is, whether plaintiffs' claims are "taxpayer actions," "taxpayer derivative actions," "*qui tam* actions," or "whistleblower actions."

Plaintiffs' briefs claim they bring these actions as a "taxpayer action" and a "common law taxpayer *qui tam* action." The term "common law taxpayer *qui tam* action" is, itself, inconsistent, since *qui tam* actions have never existed without statutory authorization and are not dependent on taxpayer status. Plaintiffs' complaints identify the actions as taxpayer derivative actions. The fact plaintiffs designate the actions as taxpayer, taxpayer derivative, or *qui tam* actions does not make them so. See, *e.g.*, *Lyons*, 201 Ill. 2d at 534-35 (the nature of plaintiffs' cause of action depends not on plaintiffs' designation but on a determination of the real party in interest to the litigation); see also 74 Am. Jur. 2d *Taxpayers' Actions* § 1 (2001) ("The mere fact that the plaintiffs designate themselves as taxpayers does not necessarily make an action a taxpayers' action").

In *Lyons*, the plaintiffs alternated in their briefs between alleging the action was brought "on behalf of the State of Illinois," or as "taxpayers for themselves and all other taxpayers similarly situated." *Lyons*, 201 Ill. 2d at 534. We examined the allegations of the plaintiffs' complaint to determine the "real party in interest" to the litigation and concluded plaintiffs were bringing the case as a taxpayer derivative action, "seeking to enforce, on behalf of the state, a cause of action that belongs to the state." *Lyons*, 201 Ill. 2d at 535, citing *Feen*, 109 Ill. 2d at 345. Accordingly, the true nature of plaintiffs' causes of action and, ultimately, plaintiffs' standing in this litigation rests on the material allegations of the complaints and a determination of the "real party in interest" under each claim. See *Lyons*, 201 Ill. 2d at 534-35; see also 74 Am. Jur. 2d *Taxpayers' Actions* § 1 (2001) ("in determining whether an action is a taxpayers' action, the principal and material allegations of the complaint are to be considered").

With these concepts in mind, we now examine

whether plaintiffs have standing to maintain suit under any of the claims of their complaints.

## A. Common Law Claims

We first consider whether the circuit court properly dismissed plaintiffs' common law claims alleging fraud, breach of fiduciary duty, breach of contract, accountant malpractice, and fraudulent and negligent misrepresentation. Plaintiffs acknowledge our recent decision in *Lyons*, 201 Ill. 2d 529, is controlling, but urge this court to reconsider *Lyons*.

In *Lyons* the plaintiffs filed a "taxpayers action brought on behalf of the State of Illinois" against former Governor George Ryan and others, alleging illegal solicitation and receipt of political contributions through the office of the Illinois Secretary of State. The complaint sought the imposition of constructive trusts on funds and benefits alleged to be illegally received by defendants, and recovery of fraudulently obtained public funds pursuant to article XX (735 ILCS 5/20—101 (West 1998)).

In their briefs, the *Lyons* plaintiffs, as we previously mentioned, alternated between alleging the action was brought "on behalf of the State of Illinois," or as "taxpayers for themselves and all other taxpayers similarly situated." We recognized that in examining the issue of standing, a court must first determine the "real party in interest" in the litigation. *Lyons*, 201 Ill. 2d at 534. We determined the state was the "real party in interest" because: (1) only the state would be entitled to the benefits of a successful action; (2) plaintiffs were seeking to enforce a cause of action belonging to the state; and (3) the claimed injury impacted the government entity and was not personal to the taxpayers. *Lyons*, 201 Ill. 2d at 535. Since the state was the "real party in interest" to the litigation, we concluded the *Lyons* plaintiffs were bringing the case as a "taxpayer derivative action" and standing to bring a taxpayer derivative action

turns largely on the identity of the governmental entity that is the real party in interest. *Lyons*, 201 Ill. 2d at 535. Since only the Attorney General has the constitutional power to represent the state when the state is the real party in interest, we were compelled to hold that the plaintiffs lacked constitutional standing to bring a taxpayer common law action for an accounting, restitution, and imposition of constructive trusts on behalf of the state. *Lyons*, 201 Ill. 2d at 534-40.

This court engaged in an extensive examination of the history of taxpayer standing and the line of cases detailing the authority of the Attorney General in Illinois. *Lyons*, 201 Ill. 2d at 534-40. Those cases included *Fergus*, 270 Ill. 304, where this court recognized "that under the 1870 Illinois Constitution, the Attorney General was the *only* officer empowered to represent the state in any suit or proceeding when the state was the real party in interest." (Emphasis added.) *Lyons*, 201 Ill. 2d at 535, citing *Fergus*, 270 Ill. at 342. In *Fergus*, this court could not have made its pronouncement more clear:

> "As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the *only* officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, *except where the constitution or a constitutional statute may provide otherwise.* With this exception, only, he is the sole official adviser of the executive officers and of all boards, commissions and departments of the State government, and it is his duty to conduct the law business of the State, both in and out of the courts." (Emphases added.) *Fergus*, 270 Ill. at 342.

We noted in *Lyons* that *Fergus* has never been overruled and cited *People ex rel. Scott v. Briceland*, 65 Ill. 2d 485, 495 (1976), holding that *Fergus* remained valid law upon the adoption of the 1970 Illinois Constitution. *Lyons*, 201 Ill. 2d at 536.

In *Lyons*, we also examined *Briceland*, 65 Ill. 2d 485.

In *Briceland,* this court held that " 'the Attorney General is the *sole* officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest \*\*\*.' " (Emphasis added.) *Lyons,* 201 Ill. 2d at 536, quoting *Briceland,* 65 Ill. 2d at 500. We also observed in *Lyons* that on the same day *Briceland* was decided, "this court also held in *Fuchs* [*v. Bidwill,* 65 Ill. 2d 503 (1976)], that the Attorney General 'is the *only* officer empowered to represent the State in litigation in which it is the real party in interest.' *Fuchs,* 65 Ill. 2d at 510." (Emphasis added.) *Lyons,* 201 Ill. 2d at 537.

In *Lyons,* we declined the plaintiffs' invitation to overrule *Fuchs* and reaffirmed this court's holding that "the Attorney General possesses the *exclusive* constitutional power and prerogative to conduct the state's legal affairs." (Emphasis in original.) *Lyons,* 201 Ill. 2d at 540. Consequently, we held the plaintiffs lacked standing to bring a common law action for an accounting, restitution, and the imposition of constructive trusts. *Lyons,* 201 Ill. 2d at 540.

The *Lyons* holding applies with equal force to plaintiffs' common law claims in these appeals. Despite this court's reliance on a long line of precedent, plaintiffs contend *Lyons* was wrongly decided and ask this court to reconsider and overrule *Lyons.* Plaintiffs simply want this court to rewrite history and overrule nearly a century of precedent. This we will not do. The doctrine of *stare decisis* requires strict adherence to prior decisions and we will not depart from well-settled principles of law absent good cause or compelling reasons. *People v. Robinson,* 187 Ill. 2d 461, 463-64 (1999); *Moehle v. Chrysler Motors Corp.,* 93 Ill. 2d 299, 304 (1982).

This court consistently has held, under both the 1870 and the 1970 constitutions, the Attorney General is the "chief legal officer of the State," and the state govern-

ment's " 'only legal representative in the courts.' " (Emphasis added.) *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 398-99 (1977), quoting *Fergus*, 270 Ill. at 337. In fact, this court has recognized "[t]he Attorney General has the common law duty to protect the public purse as a matter of general welfare." *Hartigan*, 153 Ill. 2d at 483. In *Hartigan*, we reasoned that the Attorney General, as the representative of the state, had complete authority to recover damages sustained by any agency or political subdivision of the state. *Hartigan*, 153 Ill. 2d at 484.

Plaintiffs argue citizen or taxpayer standing "is a well-accepted tool for protection of the public fisc." While this may be true, plaintiffs' common law claims are not "taxpayer actions" or "*qui tam* actions." Rather, plaintiffs' common law claims are, by definition, "taxpayer derivative" claims. Similar to the common law claims made by the plaintiffs in *Lyons*, "only the state would be entitled to the benefits of a successful action, not individual taxpayers." *Lyons*, 201 Ill. 2d at 535. Moreover, the alleged injury to be remedied is not personal and direct to the taxpayer. Rather, it is the state that has been injured, and it is the state that has the right to proceed, but has declined to intervene in the action. Accordingly, it is the state that is the real party in interest and plaintiffs' common law claims are actually "taxpayer derivative actions," brought by taxpayers, on behalf of the state, to enforce a cause of action belonging to the state. See *Lyons*, 201 Ill. 2d at 535, citing *Feen*, 109 Ill. 2d at 345; see also 74 Am. Jur. 2d *Taxpayers' Actions* § 4 (2001). The state is, therefore, the only real party in interest and the Attorney General has the exclusive constitutional authority to represent the state. Consequently, plaintiffs lack standing to bring a taxpayer derivative action for common law claims of fraud, breach of fiduciary duty, breach of contract, accountant malpractice, and fraudulent and negligent misrepresentation.

Contrary to plaintiffs' arguments, our holding in *Lyons* does not interfere with a citizen's right to bring taxpayer actions. It bears repeating that a "taxpayer action" is, by definition, an action brought by private persons in their capacity as taxpayers, "on behalf of themselves and as representatives of a class of taxpayers similarly situated within a taxing district or area, upon a ground which is common to all members of the class, and for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as such taxpayers." 74 Am. Jur. 2d *Taxpayers' Actions* § 1 (2001) (citing *Conrad*, 68 N.D. 167, 277 N.W. 504, and *Canton Farm Equipment*, 501 So. 2d 1098). Here, plaintiffs' actions are brought derivatively on behalf of the state against third parties.

While it is true *Lyons* held private persons lack constitutional standing to bring taxpayer derivative suits when the state is the real party in interest and in that sense restricts taxpayer derivative actions, *Lyons* does not interfere with, or affect, true "taxpayer" actions, when the taxpayer is a real party in interest. In other words, the taxpayer is a real party in interest when "entitled to the benefits if the action is successful" and, therefore, has an "actual and substantial interest" as distinguished from one who has only a "nominal" interest in the litigation. *Lyons*, 201 Ill. 2d at 534 (citing *Vukusich v. Comprehensive Accounting Corp.*, 150 Ill. App. 3d 634, 640 (1986), and Black's Law Dictionary 1264 (6th ed. 1990)).

Plaintiffs present no basis for this court to depart from nearly a century of our well-established precedent. Accordingly, the doctrine of *stare decisis* requires this court's adherence to *Lyons* and its predecessors, and we decline plaintiffs' request to overrule those cases. The circuit court therefore properly dismissed plaintiffs' common law claims.

## B. Article XX

Plaintiffs acknowledge *Lyons* is directly applicable to their article XX claims. In *Lyons*, this court held section 20—104(b) of article XX unconstitutional to the extent it purports to confer standing on private citizens to sue in cases when the state is the real party in interest because only the Attorney General has constitutional standing in those circumstances. *Lyons*, 201 Ill. 2d at 541.

Plaintiffs again claim *Lyons* was incorrectly decided. Plaintiffs contend under article XX the Attorney General retains sufficient control of the litigation because the Attorney General receives notice of the intention to file suit. Before the private person may proceed with the suit, the Attorney General has 60 days either to institute action or to notify the private citizen an action will be commenced or arrangements have been made for settlement.

Article XX imposes civil liability upon "[a]ny person" who fraudulently and knowingly obtains public funds from the state or a local governmental unit. 735 ILCS 5/20—102, 20—103 (West 2002). The defendant is liable for refunding or repaying the amount received and may be liable for up to treble damages and a civil penalty not to exceed $2,000 per instance. 735 ILCS 5/20—102, 20—103 (West 2002). Section 104 of article XX provides, in relevant part:

"(a) *** Civil recoveries provided for in this Article shall be recoverable only: (1) *in actions on behalf of the State*, by the Attorney General; ***

(b) Notwithstanding any other provision in this Section, *any private citizen residing within the boundaries of the governmental unit affected may bring an action to recover the damages authorized in this Article on behalf of such governmental unit* if: (a) the citizen has sent a letter by certified mail, return receipt requested, to the appropriate government official stating his intention to file suit for recovery under this Article and (b) the appropriate governmental official has not, within 60 days of the date of

delivery on the citizen's return receipt, either instituted an action for recovery or sent notice to the citizen by certified mail, return receipt requested, that the official has arranged for a settlement with the party alleged to have illegally obtained the compensation or that the official intends to commence suit within 60 days of the date of the notice. A denial by the official of the liability of the party alleged liable by the citizen, failure to have actually arranged for a settlement as stated, or failure to commence a suit within the designated period after having stated the intention in the notice to do so shall also permit the citizen to commence the action.

For purposes of this subsection (b), appropriate government official shall mean: (1) the Attorney General, where the government unit alleged damaged is the State ***.

Any private citizen commencing an action in compliance with this subsection which is reasonable and commenced in good faith shall be entitled to recover court costs and litigation expenses, including reasonable attorney's fees, from any defendant found liable under this Article." (Emphases added.) 735 ILCS 5/20—104 (West 2002).

Standing under section 20—104(b) of article XX is not dependent on "taxpayer" status because section 20—104(b) only requires that the person bringing the action be a "private citizen residing within the boundaries of the governmental unit affected." 735 ILCS 5/20—104(b) (West 2002). Claims brought under section 20—104(b) of article XX are not *"qui tam"* actions because the purported statutory grant of standing does not make the private citizen a real party in interest, nor does it provide that the private citizen share in the recovery. Plaintiffs' article XX claims are, therefore, "derivative" actions brought *"on behalf of the State"* (emphasis added) (735 ILCS 5/20—104(a)(1) (West 2002)), and the state is the only real party in interest.

We reject plaintiffs' argument that the Attorney General retains sufficient control over the litigation of an article XX claim brought by a private citizen. Section 20—104(b) impermissibly permits a private citizen to

represent the state without providing the Attorney General any control over the litigation. This is not to say that the legislature could not cure section 20—104(b) by providing the Attorney General with the ability to maintain effective control over article XX litigation. However, as we held in *Lyons*, section 20—104(b) of article XX, as written, unconstitutionally usurps the power of the Attorney General. *Lyons*, 201 Ill. 2d at 541. We reaffirm our holding in *Lyons* and reiterate that when the state is the only real party in interest, the Attorney General has the exclusive authority to represent the state. Under *Lyons*, article XX's grant of standing to private citizens is unconstitutional and plaintiffs, therefore, lack standing to bring article XX claims on behalf of the state. Accordingly, the circuit court properly dismissed plaintiffs' article XX claims. See *Lyons*, 201 Ill. 2d at 541-42.

## C. WHISTLEBLOWER REWARD AND PROTECTION ACT

The circuit court dismissed plaintiffs' claims brought under the Whistleblower Reward and Protection Act (740 ILCS 175/1 *et seq.* (West 2002)), holding the Act unconstitutionally usurped the Attorney General's duties as the sole legal representative of the state under the rationale in *Lyons*, 201 Ill. 2d 529. The constitutionality of a statute is a question of law that we review *de novo*. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003). Statutes are presumed constitutional and courts are required to construe statutes to "uphold their constitutionality whenever reasonably possible." *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002).

We begin our analysis with a review of the Act. The Act imposes civil liability upon "[a]ny person" who, *inter alia*, "knowingly presents, or causes to be presented, to an officer or employee of the State *** a false or fraudulent claim for payment or approval." 740 ILCS

175/3(a)(1) (West 2002). A person who violates the Act is liable to the state for a civil penalty of not less than $5,000 and not more than $10,000, plus treble damages. 740 ILCS 175/3(a) (West 2002).

An action under the Act may be commenced by the Attorney General. 740 ILCS 175/4(a) (West 2002). A private person may also bring a *qui tam* civil action *"for the person* and for the State" (emphasis added), "in the name of the State." 740 ILCS 175/4(b) (West 2002).

A *qui tam* plaintiff bringing an action under the Act must serve the state with "[a] copy of the complaint and written disclosure of substantially all material evidence and information." 740 ILCS 175/4(b)(2) (West 2002). The complaint is filed *in camera* and remains under seal for at least 60 days. 740 ILCS 175/4(b)(2) (West 2002). The Attorney General then has 60 days (plus any extensions granted by the court) to investigate the claim and decide whether to intervene. 740 ILCS 175/4(b)(2) (West 2002).

When the Attorney General intervenes, the Attorney General assumes "primary responsibility for prosecuting the action," and the *qui tam* plaintiff has a right to continue as a party in the case, subject to certain limitations. 740 ILCS 175/4(c) (West 2002). The Attorney General may dismiss or settle the action at any time "notwithstanding the objections of the person initiating the action." 740 ILCS 175/4(c)(2)(A), (c)(2)(B) (West 2002). The Attorney General may also restrict the *qui tam* plaintiff's participation in the action. 740 ILCS 175/ 4(c)(2)(C) (West 2002).

If the Attorney General declines to proceed with the action, the *qui tam* plaintiff has the right to proceed, and the Attorney General may later intervene. 740 ILCS 175/ 4(c)(3) (West 2002). The Attorney General has the right to monitor the action and receive copies of all pleadings and deposition transcripts. 740 ILCS 175/4(c)(3) (West 2002). In the event "certain actions of discovery by the

person initiating the action would interfere with the State's investigation or prosecution of a criminal or civil matter," the Attorney General may seek a stay of discovery or simply exercise the Attorney General's ultimate authority and dismiss the *qui tam* action. 740 ILCS 174/4(c)(2)(A), (c)(4) (West 2002).

The *qui tam* plaintiff is entitled to receive 15% to 25% of the proceeds of the action if the Attorney General intervenes. 740 ILCS 175/4(d)(1) (West 2002). If the Attorney General elects not to intervene, the *qui tam* plaintiff is entitled to receive 25% to 30% of the proceeds, plus reasonable attorney fees and costs. 740 ILCS 175/4(d)(2) (West 2002).

In addition to its *qui tam* provisions, the Act also protects an employee from retaliation for disclosure of an employer's misconduct. 740 ILCS 175/4(g) (West 2002). The Act thus contains both "whistleblower" and "*qui tam*" provisions. Plaintiffs assert standing under the *qui tam* provisions of the statute.

We must first determine the real party in interest under the *qui tam* provisions of the Act. See *Lyons*, 201 Ill. 2d at 534. The real party in interest is the person or entity entitled to recovery if the lawsuit is successful who "has an actual and substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the case." *Lyons*, 201 Ill. 2d at 534.

The Act closely mirrors the Federal False Claims Act originally enacted in 1863. See 31 U.S.C. §§ 3729 through 3733 (2000). The United States Supreme Court has recently addressed the issue of standing of a *qui tam* plaintiff under the Federal False Claims Act, and we find its analysis instructive. *Vermont Agency*, 529 U.S. 765, 146 L. Ed. 2d 836, 120 S. Ct. 1858.

The Federal False Claims Act provides: "A person may bring a civil action for a violation of section 3729 *for*

*the person* and for the United States Government." (Emphasis added.) 31 U.S.C. § 3730 (2000). In examining standing under the Federal False Claims Act, the Supreme Court noted that the complaint clearly asserted an injury to the United States—an injury to its sovereignty based on the violation of its laws, and a proprietary injury from the alleged fraud. *Vermont Agency*, 529 U.S. at 771, 146 L. Ed. 2d at 844, 120 S. Ct. at 1862. It was not clear, however, if the complaint asserted an injury to the complaining party (the relator), a prerequisite for standing under article III of the United States Constitution. *Vermont Agency*, 529 U.S. at 771, 146 L. Ed. 2d at 844, 120 S. Ct. at 1862. The Supreme Court stated that "[i]t would perhaps suffice to say that the relator [in an action brought under the Federal False Claims Act] is simply the statutorily designated agent of the United States, *in whose name* \*\*\* the suit is brought—and that the relator's bounty is simply the fee he receives *out of the United States' recovery* for filing and/or prosecuting a successful action on behalf of the Government." (Emphases in original.) *Vermont Agency*, 529 U.S. at 772, 146 L. Ed. 2d at 845, 120 S. Ct. at 1862. This analysis, however, could not adequately explain the relator's standing under the Federal False Claims Act because the statute "gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." (Emphasis in original.) *Vermont Agency*, 529 U.S. at 772, 146 L. Ed. 2d at 845, 120 S. Ct. at 1862. The Supreme Court therefore reasoned that some explanation of standing other than agency for the United States government had to be identified to explain the portion of recovery retained by the relator. *Vermont Agency*, 529 U.S. at 772, 146 L. Ed. 2d at 845, 120 S. Ct. at 1862.

The Supreme Court went on to recognize that the bounty the relator would receive if the suit succeeded undoubtedly constituted a " 'concrete private interest in

the outcome of [the] suit.' " *Vermont Agency*, 529 U.S. at 772, 146 L. Ed. 2d at 845, 120 S. Ct. at 1862, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573, 119 L. Ed. 2d 351, 372, 112 S. Ct. 2130, 2143 (1992). This interest, however, was insufficient to give rise to a cognizable injury in fact on the part of the relator because it was merely a "by-product" of the lawsuit itself. *Vermont Agency*, 529 U.S. at 773, 146 L. Ed. 2d at 845, 120 S. Ct. at 1863, citing *Steel Co.*, 523 U.S. at 107, 140 L. Ed. 2d at 235, 118 S. Ct. at 1019.

Although there was no cognizable injury in fact suffered by the relator to justify the Federal False Claims Act's conferral of an interest in the lawsuit upon the relator, the Supreme Court concluded "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor" provided an adequate basis for the relator's suit. *Vermont Agency*, 529 U.S. at 773, 146 L. Ed. 2d at 846, 120 S. Ct. at 1863. The Supreme Court reasoned that the Federal False Claims Act could "reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773, 146 L. Ed. 2d at 846, 120 S. Ct. at 1863. Therefore, the relator's complaint alleging an injury in fact to the United States sufficed to confer standing on the relator. *Vermont Agency*, 529 U.S. at 774, 146 L. Ed. 2d at 846, 120 S. Ct. at 1863.

We adopt the reasoning of *Vermont Agency* and hold a *qui tam* plaintiff is a partial assignee of the state's claim under the *qui tam* provisions of the Act permitting a private person to "bring a civil action for a violation of [the Act] *for the person and for the State.*" (Emphasis added.) 740 ILCS 175/4(b)(1) (West 2002). The *qui tam* statute therefore gives a *qui tam* plaintiff a personal stake in the outcome. In other words, the interest of a *qui tam* plaintiff in a claim under the Act is justified as a partial assignment of the state's right to bring suit. Ac-

cordingly, under the Act, a *qui tam* plaintiff is a "real party in interest," together with the state.

We must address, however, whether the *qui tam* provisions of the Act usurp the constitutional powers of the Attorney General to represent the state. The parties urge differing interpretations of the Act's *qui tam* provisions. Plaintiffs argue the Act is constitutional because it places sufficient control in the hands of the Attorney General.

In contrast, UBS argues the Act is unconstitutional because it affords the Attorney General far less control over an action than does article XX. UBS contends the Act does not allow the Attorney General to preclude the *qui tam* plaintiff's participation in the case, does not allow the Attorney General to settle claims absent court approval, and limits the overall ability of the Attorney General to intervene in the action.

Additionally, Morgan Stanley argues that the Act poses no constitutional problem for *qui tam* actions brought on behalf of nonstate government entities. *Qui tam* suits on behalf of the state or its agencies, however, stand in irreconcilable conflict with the constitutional role of the Illinois Attorney General because it takes away any prosecutorial discretion and the limited role of the Attorney General does not comport with the Attorney General's constitutional duty to represent the state.

The Attorney General, on the other hand, argues that the Act is unconstitutional only to the extent it purports to confer standing on private persons to sue when the state has a real interest and the Attorney General has declined to intervene in the case. According to the Attorney General, when the Attorney General intervenes in an action under the Act, the Attorney General's constitutional authority to direct and control the litigation is safeguarded.

Plaintiffs counter that the Act provides the Attorney General with sufficient control over the litigation because

it allows for intervention of the Attorney General at any time. Further, according to plaintiffs, the plain language of the Act provides the Attorney General may dismiss the case "notwithstanding the objections of the person initiating the action." Thus, plaintiffs argue, this court should uphold the constitutionality of the Act.

In considering the parties' arguments for various interpretations of the Act's *qui tam* provisions, we reiterate that statutes are presumed constitutional. *In re Curtis B.*, 203 Ill. 2d 53, 58 (2002). Since statutes enjoy a strong presumption of constitutionality, we must construe statutes to "uphold their constitutionality whenever reasonably possible." *Hill*, 202 Ill. 2d at 157.

We hold the *qui tam* provisions of the Act do not usurp the constitutional powers of the Attorney General to represent the state. The Act does not suffer the same infirmities as section 20—104(b) of article XX. Article XX, as it is currently written, purports to confer standing upon private citizens to sue on behalf of the state when the Attorney General declines to proceed with an action, with absolutely no subsequent involvement by the Attorney General. In other words, section 20—104(b) of article XX gives private citizens the unfettered right to prosecute claims in the state's name, without the Attorney General's oversight or participation in the action. As we have noted, section 20—104(b) of article XX is not a *qui tam* provision. Rather, section 20—104(b) of article XX is a citizen "derivative action" provision.

In contrast, the *qui tam* provisions of the Act impose significant restrictions on *qui tam* plaintiffs. Although the *qui tam* plaintiffs may "conduct" the litigation on the state's behalf, the Attorney General retains authority to "control" the litigation.

As pointed out by *amici*, AARP and Taxpayers Against Fraud, the Act's *qui tam* provisions ensure the Attorney General retains authority to control the litiga-

tion at every stage of the proceedings. For example, a *qui tam* plaintiff commences suit by filing a complaint *in camera* and serving it on the Attorney General with all material evidence in the *qui tam* plaintiff's possession. 740 ILCS 175/4(b)(2) (West 2002). The complaint remains under seal for at least 60 days while the Attorney General investigates the allegations and the *qui tam* plaintiff may not proceed with the suit until the Attorney General completes an investigation and decides whether to intervene. 740 ILCS 175/4(b)(2), (b)(3) (West 2002). The Attorney General is entitled to extensions of time as necessary to complete an investigation. 740 ILCS 175/4(b)(3) (West 2002). If the Attorney General elects to intervene, the Attorney General has primary responsibility for prosecuting the action and is not bound by any act of the *qui tam* plaintiff. 740 ILCS 175/4(c)(1) (West 2002). Even though the *qui tam* plaintiff remains a party to the action, the Attorney General may restrict the *qui tam* plaintiff's participation in the litigation if it would interfere with or unduly delay the state's prosecution or if it would be "repetitious, irrelevant, or for purposes of harassment." 740 ILCS 174/4(c)(2)(C) (West 2002).

Even when the Attorney General declines to intervene, the Attorney General retains control over the litigation by monitoring the proceedings through receiving copies of all pleadings and deposition transcripts. 740 ILCS 715/4(c)(3) (West 2002). The Attorney General may even stay certain discovery if it would interfere with an investigation or prosecution of a criminal or civil suit arising out of the same facts. 740 ILCS 175/4(c)(4) (West 2002). No one but the Attorney General may intervene in the action, and the Attorney General retains the right to intervene in the lawsuit at any time. 740 ILCS 175/4(b)(5), (c)(3) (West 2002). If the Attorney General has already initiated an action under the Act or filed any other civil action based on the allegations of the potential

*qui tam* suit, the *qui tam* plaintiff is foreclosed from bringing the action. 740 ILCS 175/4(e)(3) (West 2002). Further, the Attorney General may elect to pursue the allegations of the *qui tam* complaint through any "alternate remedy" available to the state, including an administrative proceeding to recoup overpayments. 740 ILCS 175/4(c)(5) (West 2002).

Most critically, the Attorney General has authority to dismiss or settle the action at any time, despite the objections of the *qui tam* plaintiff. 740 ILCS 175/4(c)(2)(A), (c)(2)(B) (West 2002). Moreover, even if the *qui tam* plaintiff is permitted to proceed with the action, the Attorney General must give written consent to any attempt by the *qui tam* plaintiff to dismiss the action. 740 ILCS 175/4(b) (West 2002).

Although the *qui tam* provisions of the Act might have been more artfully drafted to avoid confusion, we determine that under the plain language of the *qui tam* provisions of the Act, once the Attorney General receives notification of the action being filed by the *qui tam* plaintiff, the Attorney General may: (1) intervene and assume primary responsibility for prosecuting the action (740 ILCS 175/4(b)(4)(A) (West 2002)); (2) decline to intervene and permit the *qui tam* plaintiff to conduct the litigation (740 ILCS 175/4(b)(4)(B) (West 2002)); or (3) simply dismiss the action (740 ILCS 175/4(c)(2)(A) (West 2002)).[1] When the Attorney General intervenes in the action, the Attorney General conducts the litigation. See 740 ILCS 175/4(b)(4)(A) (West 2002). Even when the Attorney General declines to intervene, the Attorney General retains complete control of the litigation. See

---

[1]The Attorney General's brief argues the circuit court properly dismissed the actions on defendants' motions when the Attorney General declined to intervene. However, we note that the Attorney General did not dismiss either of these actions, despite the statutory authority to do so. See 740 ILCS 175/4(c)(2)(A) (West 2002).

740 ILCS 175/4(c)(2)(A), (c)(2)(B) (West 2002). For these reasons, we interpret the plain language of the Act to provide that the Attorney General in all circumstances effectively maintains control over the litigation, consonant with the Attorney General's constitutional role as the chief legal officer of the state. Unlike section 20— 104(b) of article XX, the *qui tam* provisions of the Act do not usurp the constitutional power of the Attorney General.

Rather than usurping the constitutional power of the Attorney General, the *qui tam* provisions of the Act support the Attorney General's law enforcement duties. As the Attorney General's brief points out, private citizens and their attorneys play a vital role in bringing cases involving fraud and abuse of government-funded programs to the attention of the state. Since the Act was enacted in 1991, the Attorney General has brought or intervened in approximately 130 cases, almost all being brought to the attention of the Attorney General by private citizens filing *qui tam* actions. Underscoring the important role of *qui tam* actions in effective law enforcement, the Attorney General insists: "In many instances, but for the efforts of these private citizens and their attorneys, the Attorney General would not have known of these schemes to defraud the State."

*Lyons* and its predecessors simply established that the Attorney General possesses the exclusive authority to represent the state in litigation. Neither the facts nor the holdings in those cases considered whether the Attorney General's constitutional authority is usurped when the Attorney General intervenes in a *qui tam* action and assumes exclusive control of the litigation, or when the Attorney General declines to intervene in, or consents to, a *qui tam* action but retains the exclusive power to dismiss or settle the action. As this court recognized in *Fergus*:

"As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the *only* officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, *except where the constitution or a constitutional statute may provide otherwise*. With this exception, only, he is the sole official adviser of the executive officers and of all boards, commissions and departments of the State government, and it is his duty to conduct the law business of the State, both in and out of the courts." (Emphases added.) *Fergus*, 270 Ill. at 342.

This court has recognized the Attorney General's constitutional delegation of authority is not infringed when the state's interest is represented by other counsel who remain under the control of the Attorney General and serves only at the Attorney General's pleasure. See *People v. Illinois Toll Highway Comm'n*, 3 Ill. 2d 218, 236-38 (1954); *Saxby v. Sonnemann*, 318 Ill. 600 (1925). *Toll Highway Comm'n* involved, *inter alia*, a challenge to a statute authorizing the Illinois State Toll Highway Commission to appoint assistant Attorneys General and retain special counsel. The statute at issue in *Toll Highway Comm'n* expressly required the consent and approval of the Attorney General for the appointment of assistant Attorneys General and special counsel. *Toll Highway Comm'n*, 3 Ill. 2d at 236. This court noted that the statute also expressly provided assistant Attorneys General and special counsel "shall be under and subject to the control, direction and supervision of the Attorney General and shall serve only at his pleasure." *Toll Highway Comm'n*, 3 Ill. 2d at 236. Accordingly, this court found that even though the assistant Attorneys General and special counsel were representing the state, "their right to do so exists only because they are subordinates of the Attorney General." *Toll Highway Comm'n*, 3 Ill. 2d at 238.

In *Toll Highway Comm'n*, this court distinguished

*Fergus* since the appropriations in *Fergus* attempted to confer the Superintendent of Insurance with authority "entirely independent of control in the Attorney General." *Toll Highway Comm'n*, 3 Ill. 2d at 236-37. This court further noted that *Fergus* acknowledged " 'there were other representatives of the crown in the courts at common law, but they were all subordinate to the Attorney General.' " *Toll Highway Comm'n*, 3 Ill. 2d at 237. This court also looked to *Saxby*, pointing out "the multiplicity of duties of the Attorney General forbids personal attention to all of them and that the Attorney General may act through deputies or assistants in carrying out his duties." *Toll Highway Comm'n*, 3 Ill. 2d at 237. Accordingly, this court found no valid constitutional objection to the appropriation. *Toll Highway Comm'n*, 3 Ill. 2d at 238.

Similar to the statute at issue in *Toll Highway Comm'n*, the *qui tam* provisions of the Act fully recognize the Attorney General's constitutional role as the chief legal advisor of the state. Moreover, *qui tam* plaintiffs, acting as statutorily designated agents for the state, may proceed only with the consent of the Attorney General, and remain completely subordinate to the Attorney General at all times. We conclude, as in *Toll Highway Comm'n*, that the *qui tam* provisions of the Act "are a valid method of enabling the Attorney General to perform [the requisite] legal functions as attorney [for the state]." *Toll Highway Comm'n*, 3 Ill. 2d at 238.

In accordance with this court's duty to uphold the constitutionality and validity of a statute when reasonably possible, we have interpreted the Act according to its plain language. We therefore hold the *qui tam* provisions of the Act is a "constitutional statute," as it does not usurp the Attorney General's constitutional power to conduct the legal affairs of the state when the state is a real party in interest. See *Fergus*, 270 Ill. at 342 (holding

that, "*except where the constitution or a constitutional statute may provide otherwise,*" the Attorney General is the sole official legal adviser of the state (emphasis added)). Accordingly, the circuit court erred in dismissing plaintiffs' *qui tam* actions for lack of standing and in declaring the entire Act unconstitutional.

We note by virtue of the Attorney General's intervention in appeal No. 97023, she now has the primary responsibility for prosecuting the action on remand. See 740 ILCS 174/4(b)(4)(A), (c)(3) (West 2002). Since the Attorney General has not intervened in appeal No. 97866, plaintiffs may proceed to conduct the litigation in that case, subject to the Attorney General's oversight and her authority to settle or dismiss the action at any time. Of course, if the Attorney General has determined through her investigations that neither case should proceed, she may dismiss both actions, and plaintiffs shall have no right to proceed.

## III. CONCLUSION

We reiterate the Attorney General has exclusive power to represent the State of Illinois in litigation when the state is the real party in interest. We hold that the circuit court properly dismissed plaintiffs' common law and article XX claims in accordance with *Lyons*. We further hold that the *qui tam* provisions of the Whistleblower Reward and Protection Act (740 ILCS 175/1 *et seq.* (West 2002)) do not usurp the Attorney General's constitutional powers and, accordingly, the circuit court erred in dismissing plaintiffs' *qui tam* actions under the Act and in holding the Act unconstitutional. We therefore remand the causes to the circuit court of Cook County for further proceedings.

*Circuit court judgments affirmed in part and reversed in part; causes remanded.*