**UNITED STATES ex rel. Leonard H. LE BLANC III, Qui Tam Relator,**

v.

**ITT INDUSTRIES, INC., ITT Federal Systems International Corp., and ITT Federal Systems International Ltd., Defendants.**

No. 07 CIV. 401(SHS).

United States District Court, S.D. New York.

May 3, 2007.

OPINION & ORDER

STEIN, District Judge.

Relator Leonard H. Le Blanc III brings this *qui tam* action pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3733, alleging that ITT Industries, Inc. and two of its subsidiaries (collectively, "ITT") overcharged the government in connection with a contract for security guard services at U.S. military bases in Bosnia. However, relator failed to file his complaint under seal, as the False Claims Act expressly requires. *See* 31 U.S.C. § 3730(b)(2). After relator received press inquiries about the complaint on the day it was publicly filed, he faxed the Court an "Ex Parte Emergency Motion to Seal Action under the Civil False Claims Act." The following day, this Court granted relator's motion and ordered that this action be placed under seal. (Order dated Jan. 19, 2007.) One week later, defendants filed a motion to dismiss the action pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) due to relator's failure to comply with the False Claims Act's requirement that the action be filed under seal. Shortly thereafter, the government filed a "Statement of the United States of America in Support of the Defendants' Motion to Dismiss." As explained below, because relator failed to comply with the specific statutory requirement of the False Claims Act that the action be filed under seal, and because his actions frustrated the purposes behind the statute's sealing requirement, the complaint is dismissed with prejudice as to Le Blanc and without prejudice as to the government.

## I. Background

Counsel for relator Leonard H. Le Blanc III mailed the complaint in this action via "overnight mail" to the Clerk of Court for the U.S. District Court for the Southern District of New York on January 8, 2007. ("Ex Parte Opposition to ITT Defendants' Motion to Dismiss" ("Relator's Opp.") dated Feb. 8, 2007, ¶ 2.) The civil cover sheet to the complaint, which he filled out and enclosed with the complaint, stated simply that the action was brought pursuant to "31 U.S.C. § 3729 *et seq.*," but did not request that the action be filed under seal (see *id.*, Ex. 3), as required by the False Claims Act. *See* 31 U.S.C. § 3730(b)(2). Similarly, the complaint itself did not state on its face that the action was to be filed under seal. (See *id.*, Ex. 6.) Nor were the complaint and civil cover sheet accompanied by a notice of motion requesting that the Court file the com-

plaint under seal. (Declaration of Serrin Turner dated Feb. 9, 2006 ("Turner Decl.") ¶ 4.)

More than one week passed during which Le Blanc's complaint was never actually filed by the Clerk of Court (Relator's Opp. ¶ 5.), for reasons that are unclear but are not relevant to this motion. On January 17, 2007, an employee of the Clerk's office contacted relator's attorney by telephone and asked him to change the box checked for the "Basis of Jurisdiction" on the civil cover sheet from "U.S. Plaintiff" to the more correct "Federal Question." (*Id.*) In compliance with that request, plaintiff mailed a corrected civil cover sheet and the same complaint it had previously submitted by overnight mail, along with a cover letter addressed to the Clerk of Court on January 17, 2007. (*Id.*, Ex. 5.) Neither the corrected cover sheet, nor the complaint, nor the cover letter requested that the complaint be filed under seal. (See *id.*) The complaint was file-stamped by the Clerk of Court upon its receipt on January 18, 2007 at 12:16 PM and filed in the public file. (*Id.* ¶ 6, Ex. 6.) That afternoon, relator's counsel received several phone calls from reporters inquiring about the complaint, but counsel "refused all comment." (*Id.* ¶¶ 6–7.) Nevertheless, the media widely reported that day on the allegations contained in the publicly filed complaint. (Turner Decl. ¶ 6, Ex. D) (attaching Bloomberg article); (Declaration of J. William Koegel, Jr. dated Jan. 24, 2007 ("Koegel Decl.") Ex. B) (attaching Reuters and Dow Jones articles). ITT, having learned of the complaint from news reporters, obtained a copy from the Clerk of Court. (Koegel Decl. ¶¶ 3–4.)

At 7:09 p.m. on the evening of January 18, 2007, relator faxed to this Court an "Ex Parte Emergency Motion to Seal Action under the Civil False Claims Act." The following day, this Court granted relator's motion and ordered that this action be placed under seal. (Order dated Jan. 19, 2007.) ITT subsequently filed this motion to dismiss; as noted, the government then filed a statement supporting the motion, and relator has opposed it.

## II. Discussion

The parties agree that the False Claims Act requires that the complaint "be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). In addition, the parties agree that the complaint was not originally filed under seal. The question for resolution is what is the effect of relator's failure to have the complaint filed under seal when it commenced this action? Twelve years ago, the U.S. Court of Appeals for the Second Circuit determined in *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir.1995), that the complaint must be dismissed with prejudice. *Id.* at 999–1000. Indeed, the Second Circuit later wrote that "[f]ailure to comply with these mandatory threshold requirements warrants dismissal of the qui tam complaint with prejudice, which bars the qui tam plaintiff from refiling such a suit, but leaves the government free to bring suit on its own." *United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195, 200 (2d Cir.1998), *rev'd on other grounds*, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

■ In *Pilon*, the Second Circuit required dismissal with prejudice in a *qui tam* case in which the relator-plaintiffs, among other improprieties, failed to file a notice of motion requesting that the complaint be filed under seal, and their complaint did not request on its face that it be filed under seal. 60 F.3d at 997. Similarly, in the present case, when relator's

counsel first mailed the complaint and civil cover sheet to the Clerk of Court on January 8, 2007, he failed to include a notice of motion requesting that the complaint be filed under seal,[1] and also failed to indicate on the cover of the complaint that it should be filed under seal. Then, one week later, due to the unrelated fact that counsel had checked an incorrect box for "Basis of Jurisdiction" on the cover sheet, the Clerk's office notified counsel that he needed to set forth the proper basis of federal jurisdiction—"Federal Question"— on the civil cover sheet and resend that document and the complaint. This unrelated error essentially awarded Le Blanc an unexpected opportunity to realize his mistake and include with his papers a motion that his complaint be filed under seal, but Le Blanc failed to comply with the False Claims Act's requirements this second time as well.

■ Indeed, Le Blanc took even less initiative than the unsuccessful relators in *Pilon*, who at least orally "informed the court clerk that 'this was a qui tam action and [counsel] understood there to be certain sealing requirements that had to be met." ' *Id.* In this action, relator makes no such claim. (See Relator's Opp. ¶ 5.) Instead, Le Blanc attempts to excuse his failure to seek to have the complaint sealed, as required by 31 U.S.C. § 3730(b)(2), by pointing out that on the civil cover sheet accompanying his complaint, he typed "31 U.S.C. §§ 3729 *et*

*seq.*"—the False Claims Act—in the box for "cause of action." Apparently, Le Blanc expects that the employee in the office of the Clerk of Court should have recognized the significance of this statutory citation and therefore *sua sponte* filed the complaint under seal. Le Blanc's suggestion is unsupportable, given that the Southern District of New York requires a notice of motion to file a complaint under seal, and no employee of the Clerk's office is authorized to draft and sign such moving papers on behalf of a litigant. In any event, the responsibility for following the requirements of the False Claims Act falls on the party commencing the action, not on the Clerk of Court. Because Le Blanc neglected to file a notice of motion to seal, neglected to specify on the face of the civil cover sheet or the complaint or his cover letter that he sought to file the complaint under seal, and failed to even mention his intent to the employee of the Clerk of Court with whom he spoke, he has failed to comply with the requirements of 31 U.S.C. § 3730(b)(2).

■ Le Blanc seeks to distinguish *Pilon* by arguing that, in contrast to Le Blanc's actions, the Second Circuit found that the relators in *Pilon* exhibited "considerable lack of good faith." 60 F.3d at 999. Specifically, Le Blanc notes that unlike the relators' counsel in *Pilon*, who "immediately allowed his clients to give a detailed interview to the press concerning both the complaint's allegations and matters not

---

1. Section 6 of the Southern District's "Procedures for Electronic Case Filing," entitled "Sealed Documents," states:

   Documents ordered to be placed under seal may not be filed electronically unless specifically authorized by the Court. A motion to file documents under seal should be filed electronically unless prohibited by law; however, a motion to file under seal that includes a statement of why the filing should not be made electronically may be

made in paper copy. The order of the Court authorizing the filing of documents under seal may be filed electronically unless prohibited by law. A paper copy of the order must be attached to the documents under seal and be delivered to the Clerk. United States District Court for the Southern District of New York "Procedures for Electronic Case Filing" § 6 (available at http://wwwl.nysd.uscourts.gov/ecf/procedures_ecf.pdf)

mentioned in that pleading," *id.*, here relator's counsel declined to speak with the press. Le Blanc also notes that he served the government with his complaint—as required by the False Claims Act—whereas the relators in *Pilon* did not. *Id.*

However, the Second Circuit's ruling in *Pilon* did not turn on whether there was bad faith on the part of the relators. Instead, that Court ruled that "it was an abuse of discretion to dismiss the Pilons' *qui tam* claims without prejudice because, as in *Erickson*, the Pilons' 'failure to comply with the filing and service provisions [of § 3730(b)(2)] irreversibly frustrated the congressional goals underlying those provisions.'" *Id.* at 1000 (quoting *Erickson ex rel. United States v. American Inst. of Bio. Sci.*, 716 F.Supp. 908, 912 (E.D.Va. 1989)). Thus, pursuant to the holding in *Pilon*, this Court must analyze whether Le Blanc's failure to comply with the requirements of the False Claims Act frustrated the purposes of that statute such that this Court should dismiss Le Blanc's action with prejudice.

In *Pilon*, the Second Circuit noted that when Congress revised the False Claims Act in 1986, it was concerned that "qui tam claims might overlap with or tip a defendant off to pending criminal investigations." *Id.* at 998. Based on this overarching Congressional concern, the Second Circuit identified four specific reasons Congress chose to create the statutory requirement that False Claims Act claims be filed under seal:

> [T]he sixty-day sealing period, in conjunction with the requirement that the government, but not the defendants, be served, was intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Gov-

ernment's interest to intervene and take over the civil action. A secondary objective was to prevent defendants from having to answer complaints without knowing whether the government or relators would pursue the litigation. Other interests . . . are also protected. For example, a defendant's reputation is protected to some degree when a meritless qui tam action is filed, because the public will know that the government had an opportunity to review the claims but elected not to pursue them. In addition, when a potentially meritorious complaint is filed, a defendant may be willing to reach a speedy and valuable settlement with the government in order to avoid the unsealing.

*Id.* at 998–99 (internal citations and quotation marks omitted).

In the present case, Le Blanc's actions breached Congress's overarching purpose in enacting the *in camera* filing requirement because if the government were in fact already investigating ITT, defendants have now been "tipped off" as to possible legal action against them, since relator filed the complaint publicly and ITT was alerted to the existence of the lawsuit and its allegations from press reports and obtained a copy of the complaint. (See Koegel Decl. ¶¶ 3–4.) In order to assess how much damage Le Blanc has caused, this Court need not speculate as to whether the investigation the government is conducting into the subject matter of the complaint began before or after Le Blanc filed its complaint. (See Government letter dated April 13, 2007.) Because ITT has been fully apprised of the complaint's allegations, the government now faces a diminished "opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the government is already investigating and whether it is in the Government's interest

to intervene and take over the civil action." *Pilon*, 60 F.3d at 998–99. The government may of course still investigate ITT's allegedly improper actions, but it must now do so without the advantage that stems from investigating without the target's knowledge of the inquiry, an advantage the False Claims Act gave it via the requirements that the complaint be filed under seal and the government served with a copy.

In addition, Le Blanc's actions frustrated the "other interests" supporting *in camera* filing—as identified by the Second Circuit in *Pilon*—including protection of the defendants' reputation and the Government's ability to negotiate with defendants while the complaint is still under seal in order to seek to obtain a higher-value settlement. *Id.* at 999. Indeed, the Second Circuit found in *Pilon* that because the public learned of that complaint's allegations, "[a]ny settlement value that might have arisen from the complaint's sealed status was eliminated." *Id.* Thus, even though there is no indication here that Le Blanc acted in bad faith in failing to have the complaint filed under seal,[2] the complaint must be dismissed with prejudice because relator's failure to comply with the statutory requirements of the False Claims Act frustrated the statutory purpose behind the *in camera* filing.

## III. Conclusion

Because relator did not file the complaint under seal as required by 31 U.S.C. § 3730(b)(2), defendants' motion to dismiss the complaint is granted with prejudice as to relator Leonard H. Le Blanc III and without prejudice as to the government.

---

**2.** Le Blanc also relies on a case from the U.S. Court of Appeals for the Ninth Circuit in which that court outlined the factors a district court within its circuit should balance "when constructing a sanction for a violation of the seal provision." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir.1995). In *Lujan*, the relator had "disclosed the nature and existence" of the claim to the *Los Angeles Times* while the case was under seal. *Id.* at 243. However, even if the Second Circuit were to adopt this same balancing test for a relator who violates the seal in a *qui tam* case, that analysis would not apply here because there never existed any seal that might have been violated.