**UNITED STATES of America ex rel. Melan DAVIS and Brad Davis, Plaintiffs,**

v.

**Erik PRINCE, et al., Defendants.**

**Case No. 1:08CV1244.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 12, 2011.

Susan L. Burke, Burke PLLC, Washington, DC, for Plaintiff.

Richard L. Beizer, David William O'Brien, Crowell & Moring LLP, Washington, DC, for Defendant.

## ORDER

T.S. ELLIS III, District Judge.

At issue on a threshold motion for judgment on the pleadings in this *qui tam* False Claims Act[1] ("FCA") action is whether the second amended complaint ("SAC") should be dismissed because it was not filed under seal. In essence, defendants argue that the sealing requirement set forth in 31 U.S.C. § 3730(b)(2) applies to amended complaints as well as to original complaints, and relators' failure to file the SAC under seal requires dismissal of the allegations in the SAC that were not made in the original complaint. For the reasons that follow, defendants' motion must be denied.

### I.[2]

On December 1, 2008, relators, Brad and Melan Davis, filed a *qui tam* complaint against a number of Blackwater-affiliated entities[3] and Erik Prince, the alleged owner of those entities. In their original complaint, relators alleged that defendants were liable for submitting false claims in connection with two government contracts: (1) a contract to provide security services in the aftermath of Hurricane Katrina, and (2) a contract to provide security services for State Department personnel in Iraq and Afghanistan. With respect to the Hurricane Katrina contract, the original complaint alleged that Blackwater defrauded the government in at least three respects: (1) submitting false time sheets to increase labor charges; (2) inflating reimbursable expenses; and (3) failing to

---

1. 31 U.S.C. §§ 3730–33.

2. For a full recitation of the facts, see *United States ex rel. Davis v. Prince*, 1:08cv1244, 753 F.Supp.2d 569, 2011 WL 63899 (E.D.Va. Jan. 5, 2011) (Mem. Op.).

3. The ten corporate defendants named in the original complaint are: (1) Blackwater Lodge and Training Center, Inc.; (2) Blackwater Security Consulting, LLC; (3) Blackwater Armor and Targets, LLC; (4) Blackwater Airships, LLC; (5) Blackwater Logistics, LLC; (6) Blackwater Canine; (7) Raven Development Group, LLC; (8) Greystone Limited; (9) The Prince Group LLC; and (10) EP Investments, LLC.

monitor weapons distributed to independent contractors. The original complaint further alleged that Blackwater defrauded the State Department by (1) deploying unqualified persons to Iraq, and (2) inflating reimbursable expenses.

Relators filed their original complaint under seal and provided the government with a copy of the complaint and written disclosure statements, as required by § 3730(b)(2). After receiving multiple extensions of the 60–day intervention deadline,[4] the government filed its notice of election to decline to intervene on January 29, 2010. Thereafter, an Order was issued requiring the complaint to be unsealed and served on defendants. *See United States ex rel. Davis v. Blackwater Lodge and Training Center, Inc.*, 1:08cv1244 (E.D.Va. Feb. 2, 2010) (Order). The February 2, 2010 Order further directed that "the seal be lifted as to all other matters occurring in this action after the date of this Order." *Id.* Finally, the February 2, 2010 Order stated that "the parties shall serve all pleadings and motions filed in this action, including supporting memoranda, upon the United States, as provided for in 31 U.S.C. § 3730(c)(3)." *Id.*

After properly serving their original complaint on defendants, relators filed their first amended complaint ("FAC") as a matter of course on April 14, 2010. In the FAC, which was not filed under seal, relators dropped a number of defendants from the action[5] and supplemented their allegations of fraud. Specifically, the FAC alleged that Blackwater defrauded the government on the Hurricane Katrina contract by (1) overcharging for labor; (2) inflating reimbursable expenses; and (3) providing worthless services.[6] The SAC further alleged that Blackwater defrauded the State Department on the Worldwide Personal Protective Services ("WPPS") II contract by (1) falsifying muster sheets to inflate labor charges; (2) inflating reimbursable expenses; and (3) providing worthless services.[7]

On May 19, 2010, defendants filed a motion to dismiss, arguing that the fraud allegations in the FAC did not satisfy Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants did not seek dismissal of the FAC on the ground that it was not filed under seal. On July 2, 2010, an Order issued granting in part and denying in part the motion to dismiss. *See United States ex rel. Davis v. Prince*, 1:08cv1244, 2010 WL 2679761 (E.D.Va. July 2, 2010) (Order). Specifically, the July 2, 2010 Order concluded that the worthless services allegations did not contain the level of particularity required by Rule 9(b). *Id.; See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir.2008) (holding that "an FCA plaintiff must, at a minimum, describe the 'time, place, and contents of the false representations, as well as the identity of the person making the

---

**4.** 31 U.S.C. § 3730(b)(3) ("The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2).").

**5.** The six named defendants in the FAC are: (1) Erik Prince; (2) Blackwater Security Consulting, LLC; (3) Xe Services LLC; (4) U.S. Training Center, Inc.; (5) Greystone Limited; and (6) The Prince Group LLC.

**6.** The worthless services claim relating to the Hurricane Katrina contract was premised on

Blackwater's failure to comply with material terms of the contract requiring it to monitor the weapons issued to its employees. FAC ¶ 22.

**7.** The worthless services claim relating to the State Department contract was premised on Blackwater's failure to ensure that its employees abided by the terms of the WPPS II contract governing the use of deadly force. FAC ¶¶ 34–35.

misrepresentation and what he obtained thereby.'") (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999)). The July 2, 2010 Order also dismissed Erik Prince and The Prince Group as defendants because the FAC did not demonstrate that relators had "substantial prediscovery evidence" of their involvement in the alleged fraudulent scheme, as required by Rule 9(b). *Id.; See Harrison*, 176 F.3d at 784.

On July 22, 2010, relators were granted leave to file a SAC. *See United States ex rel. Davis v. Prince*, 1:08cv1244 (E.D.Va. July 22, 2010) (Order). In the SAC, which was not filed under seal, the relators re-alleged the same fraudulent schemes that appeared in the FAC, but added allegations to their worthless services claims in order to satisfy the requirements of Rule 9(b). For example, in addition to the claim that Blackwater deployed security contractors to Iraq and Afghanistan who were unqualified because at least some of the security contractors repeatedly used excessive and unjustified force, the relators added allegations that some of Blackwater's security contractors were also unqualified because they used steroids and sold weapons illegally. Further, the relators added a number of allegations explaining how Erik Prince was personally involved in the schemes to defraud the State Department on the WPPS II contract.

On August 6, 2010, defendants filed a motion to dismiss for lack of subject matter jurisdiction, arguing that relators' claims were barred by § 3730(e)(4) because relators' claims were "based upon" public disclosures and relators were not an "original source" of the information underlying their claims.[8] While their motion to dismiss was pending, defendants filed answers to the SAC on October 4, 2010. Shortly thereafter, on October 22, 2010, defendants filed the present motion for judgment on the pleadings. This matter has been fully briefed and is now ripe for disposition.

## II.

Section 3730(b)(2) of the FCA imposes mandatory filing and service requirements, including a requirement that *qui tam* complaints "shall remain under seal for at least 60 days." 31 U.S.C. § 3730(b)(2). The primary purpose of the sealing requirement is "to allow the government first to ascertain in private whether it [is] already investigating the claims stated in the *[qui tam]* suit and then to consider whether it wishe[s] to intervene." *Erickson ex rel. United States v. Am. Inst. of Biological Scis.*, 716 F.Supp. 908, 912 (E.D.Va.1989).[9] The sealing requirement is mandatory; failure to file a complaint under seal requires dismissal of a *qui tam* complaint with prejudice. *See United States ex rel. Pilon*, 60

---

**8.** Defendants' motion to dismiss was addressed in a Memorandum Opinion dated January 5, 2011, which concluded that there was no subject matter jurisdiction over relators' claim that defendants provided worthless services in Iraq and Afghanistan under the WPPS II contract. *See United States ex rel. Davis v. Prince*, 1:08cv1244, 753 F.Supp.2d 569, 2011 WL 63899 (E.D.Va. Jan. 5, 2011) (Mem.Op.).

**9.** The secondary purposes of the sealing requirement include: (1) allowing the relator to file suit before informing the government of the basis of the suit; (2) curing an anomaly in the older version of the FCA that required a defendant to answer a *qui tam* complaint only two days after discovering whether the plaintiff was a private party or the federal government; (3) protecting the defendant's reputation; and (4) facilitating settlements. *See, e.g., United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998–999 (2d Cir. 1995); *United States ex rel. Milam v. Regents of the Univ. of Cal.*, 912 F.Supp. 868, 890 (D.Md.1995).

F.3d 995, 1000 (2d Cir.1995); *see also Erickson,* 716 F.Supp. at 912 (dismissing *qui tam* complaint where relator failed (i) to file the complaint in camera and (ii) to delay service on the defendant).

■ In this case, there is no dispute that the sealing requirement applies to original complaints, nor is there any dispute that relators filed their original complaint under seal. Instead, defendants argue that relators were required to file the SAC under seal because it contains new and substantially different allegations of fraud. To support their argument, defendants rely chiefly on *United States ex rel. Ubl v. IIF Data Solutions,* 1:06cv641,2009 WL 1254704 (E.D.Va. May 5, 2009).[10] There, the district court held that the sealing requirement did not apply to the relator's amended complaint because the amended complaint did not add new claims, but "merely added specificity to the allegations in the original complaint." *Ubl,* 2009 WL 1254704, at *4. In a footnote, however, the district court in *Ubl* recognized "that under different circumstances an amended complaint might add new substantive claims for relief, or new and substantially different (as opposed to merely more detailed) allegations of fraud from those in the original complaint." *Id.* at *4 n. 4. Under those circumstances, the district court concluded that "the policy considerations behind Section 3730(b)(2) might warrant ordering the *qui tam* relator to file the amended complaint under seal and serve it on the government." *Id.* Defendants argue that the circumstances identified in *Ubl* present here; the sealing requirement applies to the SAC because

the allegations in the SAC are substantially different from the allegations of fraud in the original complaint and FAC.

Relators counter by arguing that § 3730(b)(2) does not apply to amended complaints, citing cases in which courts have concluded that the FCA's filing and service requirements apply only to *original* complaints. *See Wisz ex rel. United States v. C/HCA Dev., Inc.,* 31 F.Supp.2d 1068, 1069 (N.D.Ill.1998) ("By its terms, the statute applies only to 'the complaint' and not to any amended complaint."); *United States ex rel. Milam v. Regents of Univ. of Cal.,* 912 F.Supp. 868, 890 (D.Md. 1995) ("Neither the statute nor any relevant case law imposed upon [relator] the duty to file any amendment to that complaint in camera and under seal."). Relators further argue that even if defendants are correct that the sealing requirement applies to amended complaints where the amended complaint adds new and substantially different allegations of fraud, those circumstances are not presented in this case.

Thus, the two issues that must be resolved here are: (1) whether the sealing requirement in § 3730(b)(2) applies to amended complaints under any circumstances; and (2) if it does, whether those circumstances present here. With respect to the first issue, any reasonable construction of the term "complaint" in the context of this statute surely includes amended complaints. In common parlance, the term "complaint" plainly covers all types of complaints, including handwritten and typewritten complaints, short and long

---

**10.** Defendants also cite four additional cases in their initial brief, but in those cases the courts addressed whether to dismiss a *qui tam* action where the relator failed to file the *original* complaint under seal, and therefore those cases are distinguishable and do not help to resolve the question presented in this case. *See United States ex rel. Summers v.* *LHC Group, Inc.,* 623 F.3d 287, 298–99 (6th Cir.2010); *United States ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 999 (2d Cir. 1995); *United States ex rel. Le Blanc v. ITT Indus., Inc.,* 492 F.Supp.2d 303, 307–308 (S.D.N.Y.2007); *Erickson,* 716 F.Supp. at 911.

complaints, intelligible and unintelligible complaints, and original and amended complaints. *See United States v. Joshua*, 607 F.3d 379, 384 (4th Cir.2010) ("In interpreting the plain language of a statute, we give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.") (internal quotations omitted). An amended complaint is essentially a complaint; it is one instantiation of the genus "complaint." Similarly, there can be no doubt that the term "pleadings" in Rule 8, Fed.R.Civ.P. also includes amended pleadings, handwritten pleadings, typewritten pleadings, etc. In other words, amended pleadings are encompassed by the term "pleadings" as just one instantiation of the genus "pleadings." By the same reasoning, the term "complaint" in § 3730(b)(2) encompasses amended complaints.[11]

Firm support for this construction of the term "complaint" is found in the sealing provision's purpose, namely to provide the government with the opportunity to decide whether it wants to intervene in a pending fraud suit. *See In re Dornier Aviation (North America), Inc.*, 320 B.R. 831, 837 (Bankr.E.D.Va.2005) ("[A] statute should be construed in a common sense fashion consistent with its intended purpose.") (citing *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir.1989)). This important statutory purpose would be frustrated were the term "complaint" construed to exclude amended complaints. For example, a relator could file an initial complaint with minor fraud allegations, and then once the government declines to intervene, the relator could amend the complaint as of right to include additional claims for relief or new and substantially different allegations of fraud.[12] Under those circumstances, the government would "no longer have an opportunity to conduct a confidential and unhurried investigation of the new claims in the amended complaint." 1 J. Boese, Civil False Claims and Qui Tam Actions § 4.04[C], p. 4–169 (3d ed.2006). On the other hand, if the amended complaint does not include new claims or substantially different allegations of fraud, the purpose of the sealing requirement loses force because the government does not need another opportunity to decide whether to intervene. In sum, then, the term "complaint" in § 3730(b)(2) encompasses original complaints and amended complaints, where the latter add new claims for relief or new and substantially different allegations of fraud.

■ This interpretation of "complaint" does not end the matter because the parties dispute whether the SAC is substantially different from the original complaint and the FAC. On this point, relators are more persuasive. All three complaints have consistently alleged that Blackwater was awarded two government contracts for the provision of private security services: (1) a contract to provide security services in the aftermath of Hurricane Katrina; and (2) a State Department contract to provide security services in Iraq and Afghanistan. The complaints have also consistently alleged that defendants defrauded the government with respect to each

---

**11.** To argue that the omission of the word "amended" in § 3730(b)(2) means that the provision excludes amended complaints is no more persuasive than an argument that omission of the word "original" excludes original complaints.

**12.** *See* Rule 15, Fed.R.Civ.P. (stating that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier").

contract by overbilling for labor charges, inflating reimbursable expenses, and providing worthless services. To be sure, the original complaint did not allege that defendants falsified musters in connection with the State Department contract, and this allegation appears in both the FAC and the SAC. Nonetheless, the record evidence establishes that relators notified the government of this allegation prior to filing suit,[13] and in any event, the false muster allegations are closely linked with the allegation that Blackwater overbilled the government for travel expenses. Moreover, while the SAC alleges, for the first time, that security contractors in Iraq and Afghanistan used steroids and sold weapons illegally, these allegations are closely related to the allegation that Blackwater used unqualified personnel to provide security services in Iraq and Afghanistan, an allegation that appeared in the original complaint.[14]

Nor is it persuasive to argue, as defendants do, that the SAC is substantially different from the original complaint because the SAC alleges a number of new allegations relating to Prince's involvement in the fraud. Prince is a named defendant in all three versions of the complaint, and the allegations in the SAC simply provide additional detail explaining how Prince was involved in the schemes to defraud the government on the State Department contract.

Because the SAC is substantially similar to the original complaint, the policy arguments supporting dismissal for failure to comply with the sealing requirement do not apply. Thus, the unsealed filing of the SAC did not deprive the government of the opportunity to investigate relators' allegations and to decide whether to intervene in the *qui tam* action. Similarly, the unsealed filing of the SAC did not "tip off" defendants to the existence of an investigation; defendants were aware that they were suspected of fraud relating to the Hurricane Katrina contract and the State Department contract as soon as the original complaint was unsealed and served on defendants. Finally, defendants have not been forced to file an answer or a motion to dismiss without knowing whether their opponent was the federal government or a private party, nor have defendants been deprived of the benefit of the public knowing that the government had a chance to review the allegations made against them and chose not to intervene.

Accordingly, for these reasons and for good cause,

It is hereby **ORDERED** that defendant's motion for judgment on the pleadings (Doc. No. 129) is **DENIED.**

---

13. 09/17/2010 M. Davis Tr. at 93:2–22.

14. Although the January 5, 2011 Memorandum Opinion renders moot defendants' motion for judgment on the pleadings to the extent that defendants request dismissal of allegations in the SAC relating to claim that defendants provided worthless security services in Iraq and Afghanistan under the WPPS II contract, the Court, in the interests of judicial economy, sets forth its views here in the event that its January 5, 2011 Memorandum Opinion is appealed.