2024 IL App (1st) 240379-U

SECOND DIVISION
December 24, 2024

No. 1-24-0379

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* RICHARD LINDBLOM and RALPH LINDBLOM, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | No. 19 L 50393 |
| BEST BUY STORES, L.P., a Minnesota corporation, | ) ) ) | Honorable John J. Curry, Jr. |
| Defendant-Appellee, | ) ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Rena Marie Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the trial court's order entering summary judgment in defendant's favor. Defendant was not entitled to summary judgment due to plaintiffs failing to file their amended complaint under seal or due to public disclosure of the facts supporting plaintiffs' claims. Plaintiffs raised a genuine issue of material fact concerning whether defendant knowingly violated tax laws for its actions after issuance of the compliance alert; therefore defendant was not entitled to summary judgment post-compliance alert. Therefore, we reverse and remand for further proceedings.

¶ 2      Plaintiffs Richard and Ralph Lindblom, on behalf of the State of Illinois, filed this case against Defendant Best Buy Stores, L.P., a company that operates numerous retail stores in Illinois. The Lindbloms claim that Best Buy violated the Illinois False Claims Act when it failed to collect and remit sales tax for the sale of dishwashers and over-the-range microwaves that were purchased from Best Buy along with installation. The trial court granted summary judgment to Best Buy. The Lindbloms appeal the trial court's summary judgment ruling. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4      Plaintiffs Richard and Ralph Lindblom own and operate Advanced Appliance Service, a retail appliance store located in Schaumburg. The Lindbloms' father opened Advance Appliance Service in 1956. The Lindbloms' store is a direct competitor of Best Buy as it pertains to the sale of consumer appliances. The Lindbloms allege that the competition between their store and Best Buy has been unfair because the Lindbloms at all times charged sales tax on the sale of installed dishwashers and microwaves, while Best Buy has been able to offer its customers lower prices by not collecting and remitting sales tax from its customers on such transactions.

¶ 5      In Illinois, retailers are required to collect and remit the State sales tax in the amount of 6.25% of gross receipts from sales of tangible personal property. 35 ILCS 120/2-10 (West 2022). In addition, retailers collect local sales tax which is added to the State sales tax. In Chicago, for example, retail sales of consumer goods are taxed at a rate of 10.25% which is made up of the 6.25% State sales tax and 4% of local sales taxes. Some sales of personal property are, however, exempt from the general sales tax and instead incur Illinois' use tax. Illinois imposes a use tax of 6.25% on either the selling price or the fair market value of the tangible personal property. 35 ILCS 105/3-10 (West 2022). "This use tax is intended to serve as a complement to the Retailers'

Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2008)), which is the primary means by which Illinois taxes retail sales of tangible goods." *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 24. "The purpose of the use tax is to preclude buyers from avoiding the retailers' occupation tax by making purchases from out-of-state vendors and to protect Illinois vendors from lost sales to those out-of-state vendors." *Id.* (citing *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010)).

¶ 6    Construction contractors do not need to collect sales tax when they incorporate tangible personal property into real estate under a construction contract. Instead, under Illinois law, the construction contractor himself is considered to be the end user of the product. When a contractor incorporates tangible personal property into real estate, rather than paying the sales tax generally paid on the purchase of that tangible property, the construction contractor instead incurs the Illinois 6.25% use tax, which the contractor must pay to the State.

¶ 7    When a construction contractor sells and installs a water heater, furnace, roofing materials, or other materials and fixtures that are incorporated into the structure, the contractor *does not* incur sales tax liability but instead pays the State use tax. But when a construction contractor sells and installs a refrigerator, washing machine, or other portable equipment, the contractor incurs state and local sales tax liability.

¶ 8    Best Buy is a retailer of consumer electronics. It also engages in the business of delivering appliances and installing them in customers' homes. Between 2002 and November 17, 2020, Best Buy collected and remitted taxes differently for different types of transactions. When Best Buy sold a dishwasher or microwave to a customer who took the appliance from the store at the time of purchase, it collected the State and local sales tax and remitted the collected sales tax to the State. If, however, the customer hired Best Buy to deliver and install a dishwasher or over-

the-range microwave, Best Buy paid use tax to the State on the cost of the good rather than sales tax. Best Buy claims it paid use tax rather than sales tax for such transactions because when it delivered and installed a dishwasher or microwave, it acted as a construction contractor and therefore was exempt from the general sales tax.

¶ 9     In 2002 and 2008, Best Buy sought and received outside professional tax advice for its tax treatment of installed appliances. Best Buy conducted an analysis of all 50 states' requirements for use tax and sales tax on installed appliance sales. Jessica Nowlin, Best Buy's head of indirect tax, testified that her department and the accounting firm KPMG created a matrix reflecting the tax treatment for installed appliances in each state. Best Buy claims it updated the matrix over the years, and it relied on internal and external tax professionals to determine its tax obligation for installed dishwashers and over-the-range microwaves. For Illinois, Best Buy determined its obligation was to pay use tax. Best Buy did not seek or receive any advice on its tax treatment for the subject transactions after 2008.

¶ 10     The Illinois Department of Revenue conducted audits of Best Buy's use and sales tax for the periods from 2005-2007 and 2011-2013. During those periods, Best Buy was assessing and paying use tax on the sale of installed dishwashers and microwaves. At the conclusion of both audits, the Department of Revenue did not assess any liability against Best Buy for improper tax practices.

¶ 11     The Lindbloms, plaintiffs, informed the Illinois Department of Revenue in a February 2015 email that certain big-box appliance retailers were not charging sales tax on the sale of built-in dishwashers and microwaves if the customer ordered installation. The Lindbloms informed the Department that, for example, Home Depot and Lowe's were declining to charge sales tax to customers for installed dishwashers and microwaves and, thus, were obtaining an

4

unfair competitive advantage over retailers who were collecting sales tax. The Lindbloms stated in the email that their own accountant advised them against adopting the same tax practice. The Lindbloms believed that the retailers who were not charging sales tax were obtaining an unfair competitive advantage over every other appliance seller in the State who was playing by the rules. The Lindbloms claimed in their email that the State and its taxpayers have "been screwed out of millions of dollars of tax revenue that we were entitled to year after year."

¶ 12    Dan Hall, audit bureau manager for the Department of Revenue responded to the Lindbloms' email, stating that the Lindbloms "have it all pretty well correct from a tax perspective." Hall explained that the Department was going to send out a compliance alert to retailers to clarify when sales tax needed to be collected on the sale of installed appliances.

¶ 13    In June 2015, the Department of Revenue issued a compliance alert on the issue. The Department explained that an "investigation has revealed that some taxpayers are incorrectly treating sales of appliances and other tangible personal property as construction contracts and failing to remit Retailers' Occupation Tax (ROT)." The Department explained that the compliance alert was intended to assist taxpayers in determining if they are acting as retailers or construction contractors and clarify the tax liabilities for each type of transaction. The first line of the alert states that "[m]ost retailers will not act as a construction contractor." One particular paragraph of the compliance alert is particularly relevant here because it specifically uses the example of a dishwasher.

> "The sale of tangible personal property with a separate agreement to install it does not convert the retail sale to a construction contract. This frequently occurs when an appliance is sold, the purchaser requires installation of the appliance, and the invoice lists the charge for Installation separately. For example, a person may purchase a dishwasher

5

at an appliance store and the seller and purchaser enter into a separate agreement for the installation of the dishwasher. The seller in this case would pay [sales tax] on the receipts from the sale of the dishwasher."

¶ 14     Best Buy received and analyzed the Department of Revenue's June 2015 compliance alert. Best Buy concluded that the compliance alert was a misstatement of Illinois law. Best Buy believed that its practices of assessing use tax rather than sales tax complied with the law while the compliance alert was at odds with the law. Best Buy continued its existing tax practices after receiving the compliance alert.

¶ 15     The Illinois Department of Revenue initiated a special audit of Best Buy's tax practices on August 31, 2015. Mark Larsen, the auditor assigned to the matter, concluded that Best Buy was incorrectly designating sales of built-in appliances as construction contracts. Larsen provided Best Buy with a memorandum explaining that Best Buy owed sales tax on the sale of the subject appliances regardless of agreeing to install them. A few months after the special audit, the Department of Revenue issued a notice of proposed liability against Best Buy for $173,610 along with additional interest and penalties. The Department did not, however, assess any penalty against Best Buy for fraud. Best Buy requested an abatement of the late payment penalty, and the Department granted the abatement. The Department explained that Best Buy exercised ordinary business care in executing its sales tax responsibilities.

¶ 16     Best Buy conferred with other big-box retailers, Lowe's and Home Depot, and all three elected to maintain their existing tax treatment for installed appliances despite the compliance alert. On behalf of Best Buy, Home Depot, and Lowe's, the Illinois Retail Merchants Association contacted the Illinois Department of Revenue about the tax treatment for installed appliances. On November 3, 2016, the Department responded to the inquiry with a General Information Letter

confirming that when a dishwasher or microwave is sold at retail, it is subject to sales tax even if the seller installs the product. The General Information Letter explains that "[t]he Department does not consider the sale of a dishwasher by a retailer with a separate agreement or listing on the invoice for installation to be a construction contract."

¶ 17   Best Buy appealed the result of the special audit, and its appeal was denied by the Department of Revenue. Best Buy then paid, under protest, the tax liability assessed under the special audit. Best Buy thereafter filed a lawsuit against the Department of Revenue under the Protest Monies Act (30 ILCS 230/1 *et seq.* (West 2022)). The circuit court in the case found that Best Buy was obligated to pay sales tax for the installed dishwashers and microwaves. *Best Buy Stores, L.P. v. Department of Revenue*, No. 17 L 050591, 2019 WL 10817221, at *1 (Ill. Cir. Ct. July 29, 2019). Best Buy appealed the circuit court's decision, and we affirmed, finding Best Buy liable for sales tax on the sale of installed dishwashers and microwaves. *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st) 191680, ¶ 22. Best Buy filed a petition for leave to appeal to the Illinois Supreme Court, but the petition for leave to appeal was denied. *Best Buy Stores, L.P. v. Department of Revenue*, 159 N.E.3d 937 (Table) (Nov. 18, 2020).

¶ 18   Best Buy claims that, since November 18, 2020, when the supreme court denied its petition for leave to appeal, it has been collecting and remitting sales tax for installed dishwashers and over-the-range microwaves. The Lindbloms, however, claim that Best Buy did not change its practices and start charging sales tax until September 2021. Best Buy maintains that its failure to start collecting sales tax in 2020 was due to a computer issue. Best Buy also claims that it has paid the Department of Revenue all outstanding sales tax liability for installed appliance sales from 2014 to November 2020.

¶ 19    Before Best Buy's litigation challenging its tax obligations, on November 12, 2015, the Lindbloms filed suit against several appliance retailers under the Illinois False Claims Act alleging that those businesses were knowingly avoiding their tax obligations and presenting the State with false monthly tax returns. Best Buy was not named in the Lindbloms' original filing and was not mentioned in the Lindbloms' statement of material evidence provided to the Illinois Attorney General.

¶ 20    On August 25, 2016, the Lindbloms amended their complaint to add a claim against Best Buy for a violation of the Illinois False Claims Act. The Lindbloms added specific allegations to their complaint about Best Buy's tax practices and its alleged failure to collect and remit the sales tax properly owed for installed appliances. The Lindbloms did not file their amended complaint under seal, as their original complaint in the case had already been unsealed. Best Buy successfully moved to have the claims against it severed from the claims against the other defendants. It then filed a motion for summary judgment arguing that it is entitled to judgment as a matter of law for three reasons: (1) the Lindbloms failed to comply with the mandatory pre-filing procedures under the Illinois False Claims Act; (2) the Illinois False Claims Act's public disclosure bar precluded the Lindbloms' claims; and (3) the Lindbloms failed to raise a genuine issue of material fact in support of the scienter requirement under the False Claims Act.

¶ 21    The circuit court entered summary judgment in Best Buy's favor. The circuit court decided in Best Buy's favor on each of the three grounds raised in its motion for summary judgment. The circuit court found that the Lindbloms failed to comply with the Illinois False Claims Act's pre-filing procedures when they amended their complaint to add a count against Best Buy for a violation of the Act. The circuit court found that, even if the Lindbloms' failure to comply with the Act's pre-filing procedures did not merit judgment being entered in Best Buy's

favor, Best Buy was entitled to summary judgment because the Lindbloms did not present any evidence that Best Buy acted with knowledge or reckless disregard of the tax laws. The circuit court also found that the public disclosure bar under the Illinois False Claims Act precluded the Lindbloms' claim because the Illinois Department of Revenue had audited and examined Best Buy's tax practices during the relevant periods in this case such that the Lindbloms were not the original source of the information.

¶ 22    The Lindbloms now appeal the judgment entered in favor of Best Buy as a matter of law. The Lindbloms argue that they complied with the statutory pre-filing requirements, that the public disclosure bar does not preclude their claims, and that there is a genuine issue of material fact regarding whether Best Buy acted with the requisite scienter to be held liable under the Illinois False Claims Act.

¶ 23                                    ANALYSIS

¶ 24    The Lindbloms argue that the trial court erred when it granted Best Buy's motion for summary judgment. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2022); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005). Summary judgment is encouraged as an expeditious manner of disposing of a lawsuit, but it should only be utilized when a party's right to a judgment is clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's decision to

grant summary judgment *de novo. Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 25    *The Illinois False Claims Act's Pre-Filing Requirements*

¶ 26    The first basis on which the trial court found Best Buy to be entitled to judgment as a matter of law was the Lindbloms' alleged failure to comply with the pre-filing provisions of the Illinois False Claims Act. Section 4(b)(2) of the Illinois False Claims Act sets forth the procedures a plaintiff must follow before filing a *qui tam* complaint under the Act. 740 ILCS 175/4(b)(2) (West 2022). The Act requires a copy of the complaint and a written disclosure of substantially all material evidence to be served on the State. *Id*. The complaint must be filed *in camera*, or under seal, for at least 60 days and is not to be served on the defendant until the circuit court so orders. *Id*. This procedure gives the State 60 days to intervene in the action and take over the prosecution of the case. *Id*.

¶ 27    Here, there is no dispute that the Lindbloms complied with the pre-filing requirements before they filed their original complaint in the case. However, the Lindbloms acknowledge that they did not repeat these steps when they amended their complaint and added a claim against Best Buy as a new defendant.

¶ 28    In ruling on Best Buy's motion for summary judgment, the circuit court explained that Best Buy only learned of the Lindbloms' failure to comply with the pre-filing requirements just before filing the motion for summary judgment, so it excused Best Buy's failure to raise the issue at any earlier point. The circuit court found that the Lindbloms' actions of pleading Best Buy into the case without complying with the Act's pre-filing requirements deprived the State of the opportunity to consider the claims at its own pace and make a determination as to whether to proceed on the claim. The circuit court noted that the State would have to show "good cause" to

intervene in the case following the amendment which imposes a higher burden on the State. The circuit court also found that it was an appropriate sanction to dismiss the claims against Best Buy for the Lindbloms' failure to follow the statutory pre-filing requirements. The circuit court expressed concern that *qui tam* plaintiffs might intentionally leave a defendant out of an initial pleading only to later add the defendant while being able to circumvent the Illinois False Claim Act's pre-filing requirements.

¶ 29    The Lindbloms argue that they complied with the Illinois False Claims Act's pre-filing procedures. They argue that the procedures apply to the original complaint and not to an amended complaint (citing *Wisz ex rel.* U.S. *v. C/HCA Development ,Inc.*, 31 F. Supp. 2d 1068, 1068-69 (N.D. Ill. 1998)). The Lindbloms rely on several federal court decisions from across the country in which the courts have held that the pre-filing requirements in the federal counterpart statute, the False Claims Act, do not apply to amended complaints. See, *e.g.*, *U.S. ex rel. Milam v. Regents of University of California*, 912 F. Supp. 868, 889-90 (D. Md. 1995). Best Buy similarly relies on federal court decisions in which the courts have found that the pre-filing requirements in the federal False Claims Act apply equally to original and amended complaints. See, *e.g.*, *United States ex rel. Williams v. Landmark Hospital of Athens, LLC*, 676 F. Supp. 3d 1323 (M.D. Ga. 2023).

¶ 30    The federal courts that have found the pre-filing requirements to apply to amended complaints have done so on the basis that the amended complaint at issue differed substantially from the original complaint. See *U.S. v. Walgreens*, 2017 U.S. Dist. LEXIS 226205, at **10-11 (C.D. Cal. May 1, 2017). Here, the allegations and the theory of liability are consistent between the original and amended complaints. The purpose of the amendment was solely to add a new defendant to the case when the Lindbloms learned of the new defendant's allegedly wrongful

conduct. Best Buy has not produced any case law where a *qui tam* defendant successfully invoked noncompliance with the pre-filing requirements to secure a dismissal after the plaintiff simply added that defendant to the case in an amended complaint while making the same allegations of liability already existing in the case. Instead, in such cases, federal courts seem to have uniformly held that the pre-filing requirements need not be repeated when a defendant is added to the case. See *Milam*, 912 F. Supp. at 890.

¶ 31   The case Best Buy relies upon most heavily, and which the circuit court seems to have found most persuasive, is a case in which the *qui tam* plaintiff sought to add new claims and new defendants after the government had already decided to intervene in the case. *United States ex rel. Brooks v. Stevens-Henager College, Inc.*, 359 F. Supp. 3d 1088 (D. Utah 2019). The putative amendments in *Brooks* not only added new defendants but also added entirely new claims that were not covered by any prior pleading. *Id*. at 1128. We do not find *Brooks* persuasive to the outcome of the factual and legal situation presented here. The government did not decide to intervene in this case and instead allowed the Lindbloms to continue managing the litigation. The Lindbloms did not act against the State's interests in any way.

¶ 32   The Illinois False Claims Act does not provide that any pleading filed subsequent to the complaint needs to be filed under seal. See 740 ILCS 175/4(b)(2) (West 2022). Instead, the pre-filing procedures relate to the initiation of the action. Indeed, the pre-filing requirements are in place to protect the rights of the government in the action, not to benefit the defendants. *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 1:10-CV-00976 (CRC), 2015 WL 13711120, at *4 (D.D.C. July 2, 2015). The sealing provision's purpose is to "provide the government with the opportunity to decide whether it wants to intervene in a pending fraud suit." *U.S. ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 682 (E.D. Va. 2011). "If the amended complaint does not

include new claims or substantially different allegations of fraud, the purpose of the sealing requirement loses force because the government does not need another opportunity to decide whether to intervene." *Id*. at 684. Additionally, once the initial case is unsealed, the benefits of filing the amended version of the complaint *in camera* and under seal appear to be diminished because the defendant and the public are already aware of the case. *United States ex rel. Guzder v. MKM Engineers Inc.*, No. CV H-05-895, 2009 WL 10697670, at *4 (S.D. Tex. Mar. 3, 2009) (citing *Claire M. Sylvia*, The False Claims Act: Fraud Against the Government § 11:100 (Updated 2009 WL FCAG § 11:100)).

¶ 33   There is no actual harm to the government here and there is nothing in the record to suggest the government would have benefitted from the amendment being filed under seal before it was filed publicly. The State was served with every filing in the case, and it never raised any issue about the amended complaint not being filed under seal. The government maintained sufficient control of the litigation here and could have sought to intervene or dismiss the case at any time if it believed the Lindbloms were acting contrary to the State's interests. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 510-12 (2005) (the Attorney General retains the right to intervene in the lawsuit at any time and, most critically, the Attorney General has authority to dismiss or settle the action at any time, despite the objections of the *qui tam* plaintiff). Despite ample notice, the government never raised any issue with Best Buy being added to the case. There is no reason to believe the government might have decided to intervene against Best Buy but not all the other named defendants.

¶ 34   A future case might present us with facts to substantiate some of the fears of gamesmanship or deception by a *qui tam* plaintiff envisioned by the trial court. But in this case, there is no indication that the Lindbloms sought to secure some advantage by not filing the

amended complaint under seal or that they intentionally withheld their claims against Best Buy from the initial complaint. Rather, the record shows that the Lindbloms learned about Best Buy's allegedly wrongful conduct after filing the original complaint and then they promptly sought to add Best Buy as a defendant. We find that Best Buy was not entitled to summary judgment on the basis of the Lindbloms' failure to file the amended complaint under seal or otherwise comply with the pre-filing requirements.

¶ 35    *Public Disclosure Bar*

¶ 36    The Illinois False Claims Act provides for the dismissal of a *qui tam* action when the allegations supporting the claim have been publicly disclosed before the *qui tam* plaintiff files suit. 740 ILCS 175/4(e)(4)(A) (West 2022). The Act provides that "[t]he court shall dismiss an action or claim under this Section, unless opposed by the State, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed: (i) in a criminal, civil, or administrative hearing in which the State or its agent is a party; (ii) in a State legislative, State Auditor General, or other State report, hearing, audit, or investigation; or (iii) from the news media." *Id*. Dismissal is not warranted under the public disclosure bar if "the action is brought by the Attorney General or the person bringing the action is an original source of the information." *Id*. The public disclosure bar is intended to preclude a relator's action when the alleged fraud was publicly disclosed in a listed source, unless the relator was an original source of certain information underlying the action. *People ex rel. Lindblom v. Sears Brands, LLC*, 2019 IL App (1st) 180588, ¶ 31.

¶ 37    Best Buy argued in the trial court that it was entitled to summary judgment on the basis of public disclosure because the same allegations or transactions that are at issue in this case were publicly disclosed by Best Buy to the State in a State audit of Best Buy. The circuit court

agreed, finding that the Department of Revenue was indisputably aware of Best Buy's tax practices relevant to this case before the Lindbloms filed suit. The circuit court likewise found that the Lindbloms were not the "original source" of the information because the Lindbloms never identified or reported to the State that Best Buy failed to pay sales tax on the subject sales.

¶ 38    The Lindbloms argue that there was no "public disclosure" here because the audits in which the information was disclosed were confidential and, therefore, not public. See 35 ILCS 120/11 (West 2022). Indeed, in a prior appeal in this case we observed that "[t]he Department's audit of Best Buy was confidential and not publicly disclosed." *Sears Brands*, 2018 IL App (1st) 171468, ¶ 14. In that prior appeal, Best Buy made a similar but different argument for dismissal, contending that the claims against it should be found to be precluded by the "government action bar." *Id*. at ¶ 22.

> "Best Buy took the position that the government action bar applied because by the time relators named Best Buy as a defendant, the Department had completed its field audit and issued a notice of proposed liability and Best Buy had initiated the Board's review, which collectively constituted an administrative civil money penalty proceeding that addressed the exact tax issues raised by relators in the *qui tam* action. Best Buy characterized the *qui tam* action as nothing more than a parasitic lawsuit that provided no benefit to the State." *Id*.

¶ 39    Again, the parties present federal case law interpreting the federal False Claims Act in which the courts have reached differing conclusions on the issue of whether confidential disclosures to the government constitute "public disclosures" mandating dismissal in false claims cases.

¶ 40    In *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 910 (7th Cir. 2009), the United States Court of Appeals for the Seventh Circuit held that when the government agency with the responsibility for investigating the claims has knowledge of the allegedly improper activity, the information has been publicly disclosed for purposes of the False Claims Act. *Id.* at 913-14. The majority of the federal circuit courts that have reviewed the issue, however, have found that disclosures made pursuant to a confidential government investigation or audit do not constitute "public" disclosures, within the meaning of the False Claims Act's public disclosure bar. See *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 126 (2d Cir. 2021). The Seventh Circuit has recognized that its position is an outlier and acknowledged the "significant force in the position of the other circuits." *Cause of Action v. Chicago Transit Authority*, 815 F.3d 267, 276-77 (7th Cir. 2016).

¶ 41    In *Foreman*, the United States Court of Appeals for the Second Circuit set forth several reasons the holding in *Glaser* should be rejected, and we find those reasons persuasive. The *Foreman* court observed that "allowing private suits when the information underlying the action is known only to government auditors and others involved in a confidential audit or investigation balances Congress's goals in encouraging private citizens with first-hand knowledge to expose fraud while avoiding civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud." *Foreman*, 19 F.4th at 126. Additionally, allowing such suits prevents the government from sitting on fraud of which it had knowledge. *Id.* We add that allowing private actions could help to uncover or root out corruption. These are persuasive reasons for not mandating dismissal of a *qui tam* case simply because the information has been disclosed to the government confidentially.

¶ 42    Best Buy argues that our unpublished decision in *People ex rel. Schad, Diamond &*

*Shedden, P.C. v. PersonalizationMall.com, Inc.*, 2016 IL App (1st) 133360-U is particularly

illuminating on the public disclosure bar issue because the State itself argued in that case that

confidential tax audits constituted public disclosures barring the relators' claims. *Id*. at ¶ 9.

However, the issue was not adjudicated on appeal in that case. Moreover, we never endorsed the

position taken by the State, we simply recounted what occurred in the circuit court. The

overwhelming majority of courts have taken the position that confidential disclosures to the

government are not public disclosures for purposes of false claims cases. We choose to follow

that well-reasoned and well-developed body of law.

¶ 43    As with the issue of the amendment addressed above, the State maintains the ability in a

*qui tam* case to intervene or dismiss the claims in the case at any time. *Scachitti*, 215 Ill. 2d at

510-12 (the Attorney General retains the right to intervene in the lawsuit at any time and, most

critically, the Attorney General has authority to dismiss or settle the action at any time, despite

the objections of the *qui tam* plaintiff). The State's broad authority over *qui tam* cases entitles it

to act against a *qui tam* plaintiff who might be proceeding in a parasitic fashion or otherwise

attempting to capitalize on public knowledge. We find that Best Buy was not entitled to

summary judgment on the basis of the public disclosure bar of false claims cases.

¶ 44    *Best Buy's Tax Obligation*

¶ 45    Before we can address the third issue raised on appeal, whether there is a genuine issue of

material fact on the scienter requirement, it is helpful to establish that Best Buy indeed was

obligated to pay sales tax under the prevailing laws. Before fully litigating the issue

unsuccessfully, Best Buy had maintained that its sale of dishwashers and over-the-range

microwaves with installation service fell within the administrative code section where it is not

obligated to collect sales tax because "[a] construction contractor does not incur Retailers' Occupation Tax liability as to receipts from … tangible personal property … incorporated into a structure as an integral part thereof … when furnished and installed as an incident of a construction contract." The Lindbloms meanwhile have always contended that Best Buy acted as a retailer when it sold dishwashers and microwaves with installation and, therefore, it was required to collect and remit sales tax on the sale of those goods.

¶ 46    A person violates the Illinois False Claims Act if they make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money to the State, or if the person improperly avoids or decreases an obligation to pay or transmit money to the State. 740 ILCS 175/3(a)(1)(G) (West 2022). Under the Act, an "obligation" to pay means an "established duty" to pay arising from a statute or regulation. 740 ILCS 175/3(b)(3) (West 2022).

¶ 47    Under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 2022)), sellers of goods are required to collect and remit sales tax for all "sales at retail." Under the Act, "sale at retail" means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption." 35 ILCS 120/1 (West 2022). It is "presumed that all sales of tangible personal property are subject to tax under this Act until the contrary is established, and the burden of proving that a transaction is not taxable hereunder shall be upon the person who would be required to remit the tax to the Department." 35 ILCS 120/7 (West 2022). The construction contractor regulation is an exception to the general rule that all sales of tangible personal property incur sales tax liability.

¶ 48    In Illinois, taxation is the rule; tax exemption is the exception. *Best Buy Stores*, 2020 IL App (1st) 191680, ¶ 18. A statute, or a regulation, providing a tax exemption is strictly construed

in favor of taxation and against exemption. *Id*. The party seeking the exemption must prove that it is entitled to it, and it is a "very heavy burden." *Id*.

¶ 49     Under the construction contractor exception, "Contractor" means any person who is engaged in the occupation of entering into and performing construction contracts for owners. 86 Ill. Admin. Code § 130.1940 (West 2022). "A contractor holds himself out to the public as having the skill and knowledge necessary to the construction of certain improvements. He does not represent himself as being engaged in the business of selling building material." *J. H. Walters & Co. v. Department of Revenue*, 44 Ill. 2d 95, 103 (1969).

¶ 50     The definition of "contractor" in the relevant administrative regulation states that a contractor is a person who "is *engaged in the occupation* of entering into and performing construction contracts for owners (emphasis added)." 86 Ill. Admin. Code 130.1940 (West 2022). While Best Buy offered some contracted-for installation services, it was never engaged in the occupation of performing construction contracts. With regard to dishwashers and microwaves, Best Buy was a retailer of goods, sometimes providing installation. The "primary" or "real" occupation of the taxpayer determines the tax classification. *Best Buy Stores*, 2020 IL App (1st) 191680, ¶ 21 (citing *Ingersoll Milling Machine Co. v. Department of Revenue*, 405 Ill. 367, 370 (1950)).

¶ 51     For the relevant transactions, the installation of the appliances was incidental to the transfer of the appliance to the customer. The overwhelmingly predominant part of the transaction here was the sale of a good at retail. For tax purposes, Best Buy treated the sale with installation of a single dishwasher or microwave as a construction project. The reality is that Best Buy was selling an appliance at retail while also making an agreement to install the item which does not transform the transaction into a construction contract. See *Best Buy Stores*, 2020 IL App

(1st) 191680, ¶¶ 22-23. Accordingly, Best Buy was required to collect and remit sales tax for its sale of dishwashers and microwaves with installation under the prevailing tax laws.

¶ 52    The results of the special audit and all of Best Buy's failed efforts to secure a ruling that it was properly interpreting the tax laws when selling installed appliances confirm that Best Buy was required to pay sales tax on the subject transactions. Nonetheless, to be liable under the Illinois False Claims Act, the Lindbloms are required to prove that Best Buy acted with the requisite scienter—that Best Buy knowingly avoided its true tax obligations.

¶ 53    *The Scienter Requirement*

¶ 54    Best Buy contends that the Lindbloms failed to produce affirmative, admissible evidence to create a genuine issue of material fact as to whether Best Buy acted "knowingly" for purposes of the Illinois False Claims Act. Best Buy argues that there was no Illinois statute, caselaw, or binding administrative guidance about the tax treatment for dishwashers and microwaves during the period relevant to this case. It argues that, at most, there was a disputed question as to whether sales tax needed to be collected for such transactions, which means there could be no "established duty" on its part and, therefore, it did not "knowingly" file false returns. The circuit court agreed with Best Buy that the state of the tax law was unclear and, thus, Best Buy did not act knowingly in avoiding its tax obligations.

¶ 55    Under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2022)), a taxpayer-defendant is liable if it "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State." 740 ILCS 175/ 3(a)(1)(G) (West 2022). The Act defines "knowingly" as: having actual knowledge, acting in deliberate ignorance of the truth, or

acting in reckless disregard of the truth. 740 ILCS 175/3(b)(1)(A) (West 2022). It is not enough for a relator-plaintiff to show "mere '[i]nnocent mistakes or negligence.' " *State ex rel. Schad, Diamond & Shedden, P.C. v. National Business Furniture, LLC*, 2016 IL App (1st) 150526, ¶ 33. Rather, the relator must prove that the taxpayer "ignored obvious warning signs, buried its head in the sand, and refused to learn information from which its duty to pay money to the State would have been obvious." *Id.* at ¶ 39. A taxpayer can be found to have acted with knowledge for purposes of the Illinois False Claims Act if it was aware it owed sales tax on the subject transactions or if it was aware of a substantial risk that its tax returns were false but submitted them anyway. *People ex rel. Stephen B. Diamond, P.C. v. Henry Poole & Co.*, 2023 IL App (1st) 220195, ¶ 32.

¶ 56    For the following reasons, we conclude that the Lindbloms failed to prove that, prior to the June 2015 compliance alert issued by the Department of Revenue, Best Buy knowingly avoided its obligation to transmit sales tax to the State. Best Buy contends that it honestly assessed its tax obligations, engaged its own accounting department and outside professionals on the issue, relied on the outcome of its Department of Revenue audit, and otherwise made good faith efforts to comply with its tax obligations so that it cannot be found to have acted with the requisite scienter under the Illinois False Claims Act. For the period prior to the issuance of the compliance alert, we agree.

¶ 57    The results of the Illinois Department of Revenue's audits of Best Buy's sales and use tax for the periods from 2005-2007 and 2011-2013 support our conclusion that the relators failed to prove Best Buy acted with the requisite knowledge to be found liable under the Illinois False Claims Act prior to the Department of Revenue's compliance alert. During those periods, Best Buy was assessing use tax on transactions for installed dishwashers and microwaves. At the

conclusion of both audits, the Department of Revenue did not assess any liability against Best Buy for improper tax practices. The Department did not raise any issues at all during the 2005-2007 and 2011-2013 audits about Best Buy's tax practices for the transaction types relevant to this case.

¶ 58     Under Illinois law, the findings of the Department after an audit is evidence the proper amount was paid by the taxpayers: "In the event that the return is corrected for any reason other than a mathematical error, any return so corrected by the Department shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due, as shown therein." 35 ILCS 120/4 (West 2022). Under Illinois law, the audit findings were *prima facie* proof that the proper amount of taxes was paid. *Id*. The results of these audits demonstrate that State auditors found no fault with Best Buy's practice when the audits were completed.

¶ 59     Along with the audit results, Best Buy demonstrated that it made some other good faith efforts to determine its tax obligations and comply with the prevailing tax laws prior to 2015. Best Buy provided deposition testimony from Jessica Nowlin, Best Buy's head of indirect tax, who testified that Best Buy conducted an analysis of all 50 states' requirements for use tax and sales tax on installed appliance sales. Nowlin testified that her department and the accounting firm KPMG analyzed the tax treatment for installed appliances in each state and concluded that Best Buy needed to pay only use tax in Illinois. Best Buy claims it relied on internal and external tax professionals when determining that its tax obligation for installed dishwashers and over-the-range microwaves was to pay use tax. These efforts, prior to Best Buy receiving the compliance alert and prior to the Department of Revenue initiating its special audit, demonstrate that Best Buy was attempting to assess its true tax liability. The Lindbloms offer no evidence to the contrary to show that, prior to June 2015, Best Buy was acting knowingly or in reckless

disregard of its true tax obligations. The record shows, however, that Best Buy did not seek or receive any advice on its tax treatment for installed appliances after 2008.

¶ 60    In June 2015, the Department of Revenue explained in a compliance alert that it conducted an investigation which revealed that some taxpayers were incorrectly treating the sale of appliances as construction contracts and failing to remit the required sales tax. In the compliance alert, the Department of Revenue explained prominently that "[m]ost retailers will not act as a construction contractor." The Department explained that "[i]f a customer that is the end user of the tangible personal property comes in and makes a retail purchase and enters into a separate agreement for installation, the sale is an over-the-counter transaction subject to [sales tax]." The Department continued by informing sellers that a person acts as a retailer and not a construction contractor when the person sells "tangible personal property over-the-counter to the end consumer regardless of a separate contract to install the tangible personal property; he incurs [sales tax] on his gross receipts regardless of the tangible personal property being attached to real estate or not."

¶ 61    The compliance alert provides two examples, both which directly address dishwashers. First, the Department explains in the alert that "if a contractor enters into an agreement with a person to remodel a kitchen and furnish and install cabinets and a dishwasher as part of the construction contract, the contractor pays Use Tax to his supplier, even if the contract breaks out the charges for the cabinets, dishwasher and installation." Second, the Department explains in the alert the type of transaction in which sales tax needs to be collected.

> "a person may purchase a dishwasher at an appliance store and the seller and
> purchaser enter into a separate agreement for the installation of the dishwasher.
> The seller in this case would pay [sales tax] on the receipts from the sale of the

dishwasher. If the purchaser buys an appliance and requests a list of persons that can install the item and the purchaser contracts with the person separately for the installation, the seller must pay [sales tax] on receipts received from the sale of the dishwasher."

¶ 62    The Department stated in the alert that "the sale of tangible personal property with a separate agreement to install it does not convert the retail sale to a construction contract. Such sales frequently occur when an appliance is sold, the purchaser requires installation of the appliance, and the invoice lists the charge for installation separately." Taking these two statements together, it is clear that the Department was notifying interested parties that when an appliance is sold and the invoice lists the sale of the tangible personal property and then lists the charge for installation, the retail sale is not converted into a construction contract just because there is an agreement for installation of the appliance.

¶ 63    Best Buy acknowledges that it received the Department's compliance alert and reviewed it. However, instead of changing its tax practices or engaging outside tax consultants to discover its tax obligations, Best Buy erroneously concluded that the compliance alert was an incorrect interpretation of the law and that its own interpretation was the correct one. Best Buy made the decision to continue its tax practices despite the Department of Revenue's directive that should have caused Best Buy to alter or at least further examine its prevailing tax practices. We conclude Best Buy's conduct following its receipt of the compliance alert creates a genuine issue of fact as to whether Best Buy acted with sufficient knowledge to be liable under the Illinois False Claims Act from that period forward.

¶ 64    We find that the compliance alert should have caused Best Buy to revisit its tax practices for the subject transactions and that its failure to do so can be considered evidence of its desire

not to learn about the proper interpretation of its Illinois tax obligations or to willfully disregard them. That evidence and different inferences that could be drawn from it, creates a triable question of fact on the issue of Best Buy's knowledge under the Illinois False Claims Act. The compliance alert specifically put Best Buy on notice that its assumptions about its tax obligations for installed dishwashers and over-the-range microwaves were incorrect, but it failed to change its practices. Despite Best Buy's prior inquiries to outside advisors regarding its sales tax obligations for installed appliances, it did not engage with any such experts following its receipt of the compliance alert. Instead of taking any steps to assess its practices in light of the compliance alert, Best Buy decided that the Department of Revenue was wrong and that the compliance alert was a misstatement of the law. Best Buy's inaction after receiving the compliance alert is arguable evidence that it "ignored obvious warning signs, buried its head in the sand, and refused to learn information from which its duty to pay money to the State would have been obvious." *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 39.

¶ 65 The circuit court found that, as a matter of law, Best Buy did not act knowingly. Whether a taxpayer acts knowingly in a false claims case is a question of fact. *United States v. Domestic Industries, Inc.*, 32 F. Supp. 2d 855, 863 (E.D. Va. 1999); *Plywood Property Assocs. v. National Flood Insurance Program*, 928 F. Supp. 500, 510 (D.N.J. 1996). Nevertheless, the circuit court found that it was a "gray area" whether use tax or sales tax needed to be collected for installed sales of dishwashers and over-the-range microwaves and, therefore, Best Buy could not be liable.

¶ 66 While Best Buy might have had uncertainty about its obligations prior to the compliance alert, the Department of Revenue's directive makes any subsequent uncertainty unreasonable. The compliance alert did not set forth any new law or any new interpretation of the existing law: it merely informed retailers such as Best Buy that, under the existing tax laws, they were

"incorrectly treating sales of appliances and other tangible personal property as construction contracts and failing to remit Retailers' Occupation Tax (ROT)."

¶ 67    The circuit court also found that Best Buy engaged in research and stayed up to date on its tax obligations such that its violation could not have been done with knowledge. But, as previously stated, Best Buy did not engage in professional analysis of Illinois tax law after 2008 and crucially did not engage in professional analysis after the 2015 compliance alert informed Best Buy and other retailers that they were applying the law incorrectly. There is also evidence that one of Best Buy's tax advisors instructed it to collect sales tax on the subject transactions as early as 2002.

¶ 68    The circuit court also found that the results of Best Buy's audits vindicated the position it took on the tax issue. But the auditors did not ever explicitly condone Best Buy's tax treatment of installed dishwashers and over-the-range microwaves. The relevant audits covered the periods from 2005-2007 and 2011-2013, so while the audits may help shield Best Buy from liability during those periods, the compliance alert changed the calculus because it directly addressed the tax practice at hand. The issuance of the June 2015 compliance alert should have caused Best Buy to revisit its tax practices going forward, but Best Buy instead reached an independent conclusion that the Department of Revenue was incorrect on the law. Best Buy's failure to examine and modify its tax practices after receiving the compliance alert could be determined by a factfinder to constitute a knowing violation of the Illinois False Claims Act.

¶ 69    In summary, we hold that the Lindbloms failed to raise a genuine issue of material fact with regard to Best Buy's knowing violation of the tax laws for the period before June 2015. However, for the period beginning June 2015, after the Department of Revenue's compliance alert was issued, there is a triable question as to whether Best Buy acted knowingly for purposes

of the Illinois False Claims Act. The relators submitted sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether Best Buy acted in knowing violation of the tax laws after June 2015. Therefore, the order of summary judgment on that issue was error. The relators proved that Best Buy was obligated to pay sales tax on its installed sales of dishwashers and over-the-range microwaves during that time, and they submitted sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether Best Buy acted in knowing violation of the tax laws after June 2015.

¶ 70    *The Relators' Request for Reassignment of Judge*

¶ 71    Finally, the relators ask that we order the case to be assigned to a new judge on remand under the authority granted to us by Illinois Supreme Court Rule 366(a)(5) (West 2022) (eff. Feb. 1, 1994). The relators suggest that the trial judge has already made his opinions known about the case and would be unlikely to reconsider those views on remand.

¶ 72    We see no reason to order the case to be reassigned. A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. *Eychaner v. Gross*, 202 Ill. 2d 228, 280-81 (2002). Erroneous findings and rulings by the trial court alone are insufficient reasons to believe that the court has a personal bias for or against a litigant. *Id*. The conclusion that a judge is not impartial is not lightly made. *In re Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 41. The record does not support the argument that a fair judgment is unlikely on remand. Therefore, we deny the relators' request for a reassignment of the case on remand.

¶ 73                                  CONCLUSION

¶ 74    Accordingly, we reverse and remand for further proceedings consistent with this order.

¶ 75    Reversed and remanded.